**UNITED STATES of America, Appellee,**

v.

**Rudolph A. TROPEANO, Defendant, Appellant.**

**No. 72–1337.**

United States Court of Appeals, First Circuit.

Argued March 6, 1973.

Decided April 10, 1973.

Lawrence F. O'Donnell, Boston, Mass., with whom Francis X. Aylward, Boston, Mass., was on brief, for appellant.

Michael J. Madigan, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALD-RICH and McENTEE, Circuit Judges.

ALDRICH, Senior Judge.

Defendant, a government meat inspector, convicted of violations of 21 U.S.C. § 622 ("Bribery of or gifts to inspectors or other officers and acceptance of gifts") by the receipt of money and meat products, from a processor, lists fifteen points on his appeal. A number are answered by our recent decision in United States v. Seuss, 1 Cir., 1973, 474 F.2d 385. A larger number need no discussion, either because they do not possibly involve plain error, or because they do not possibly involve error of any sort. Two matters remain.

Defendant's trial took place after the conviction of some other defendants on similar charges. After testimony had started, defendant's counsel learned that some of the jurors had sat in a previous case. Defendant moved for a mistrial. The court denied the motion, on the ground that the objection came too late and because the jurors were not disqualified as a matter of law.

■■ The second portion of this ruling was clearly correct. United States v. Ragland, 2 Cir., 1967, 375 F.2d 471, cert. denied 390 U.S. 925, 88 S.Ct. 860, 19 L. Ed.2d 987, and cases cited at 476 n. 2. On the record, the first was, also. Defendant knew there had been previous

trials. Although it would have been a simple matter to request the court to inquire of prospective jurors at the time of impanelling whether they had sat before, defendant did not do so. Had he done so the court should probably have regarded the disclosure as a ground for challenge for cause. Indeed, defendant had not even consumed his peremptory challenges.

■■ Defendant's counsel offers as excuse a conversation with a deputy clerk which led him to believe he was going to get "fresh" jurors. This circumstance does not appear of record with any clarity.[1] Even if we were to assume it did, it would not constitute an adequate excuse. A trial is a serious matter. It is not within the scope of the duties of a deputy clerk to supply such information. The clerk's office is often helpful and, from experience, parties may find the advice of a clerk on all sorts of matters to be valuable. Counsel must, however, take their own chances on such informal instruction, particularly in a situation like the present, where first hand information and the ability to protect oneself is readily available. The government is rarely if ever estopped by a statement of an official outside his authority. *Cf.* United States v. Rossi, 9 Cir., 1965, 342 F.2d 505.

If the rule were otherwise, courts would be obliged to forbid their clerks to have any contact with counsel except in the rigid performance of their statutory duties. The bar would be the first to object to such a rule. The alternative is that counsel must make their own decision whether to trust such informal information, or, as we have sometimes found the problem to be, and would seem here, to trust their own understanding of what the clerk may have said. In this case, if in fact counsel correctly understood the clerk and the clerk was mistaken, it is the defendant who properly must bear the consequences. In fact, in much clearer cases, as where the clerk's office fails to send out a notice, the loss falls on the party who relied on the clerk's office instead of checking the record. *See, e. g.,* Buckley v. United States, 10 Cir., 1967, 382 F.2d 611, cert. denied 390 U.S. 997, 88 S.Ct. 1202, 20 L.Ed.2d 97.

■ Secondly, defendant complains that the prosecutor violated the rule forbidding his stating in argument his personal belief in defendant's guilt. The now objected-to statement was as follows.

"Do you recall that I said in my opening statement perhaps improperly, it is not a very nice story, because I believe that is true, it is not a very nice story. It is a story that happened."

We consider that a listener would take the first part of this statement as the prosecutor's concurrence in the sorry nature of the tale told by the government's witnesses. It would have been better had he made the second sentence less direct: "I ask you to find that it happened." "I submit that it happened." "The government witnesses were clear in their testimony . . ." etc. But while we regret the form, we do not find it so positive that we must reverse. Nonetheless, the lesson to the prosecutor[2] should be obvious; "I believe" is a dirty verb.

Affirmed.

---

1. All that appears is that counsel informed the clerk that he wanted a fresh jury. It does not appear now, nor was the claim made to the district court, that the clerk informed him that, without more, he was going to get one.

2. We cannot forbear remarking, from viewing the record, that the same sauce should be applied to the gander.