Robert W. LANG

v.

Frank MURCH, Sheriff.

Supreme Judicial Court of Maine.

Argued Sept. 14, 1981.

Decided Dec. 31, 1981.

Kevin Linus Stitham (orally), C. W. & H. M. Hayes, Dover-Foxcroft, for plaintiff.

Charles K. Leadbetter, William R. Stokes (orally), Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ.

NICHOLS, Justice.

On May 16, 1978, a Piscataquis County jury found the Petitioner, Robert W. Lang, guilty of unlawful sexual contact in violation of 17–A M.R.S.A. § 255(1)(C). The Superior Court thereupon entered a judgment of conviction and sentenced the Petitioner to eleven months in the county jail. On appeal to this Court he alleged that his conviction was entered upon the verdict of a prejudiced jury. We affirmed the judgment of the Superior Court and concluded that he waived his right to challenge the composition of the jury by not objecting at voir dire and that he also presented an inadequate record for appeal. *State v. Lang*, Me., 396 A.2d 1012, 1013 (1979).

On May 9, 1979, Robert W. Lang filed this petition for writ of habeas corpus. He amended it on February 1, 1980 to include, among other grounds, an assertion that the representation by his trial counsel [1] was ineffective. The justice who presided at the hearing on this petition for habeas corpus denied the petition and found that the representation afforded by defense counsel was not constitutionally deficient. By an order limiting grant of the certificate of probable cause, we restricted this appeal to the single issue of the adequacy of the representation afforded the Petitioner by his court-appointed trial counsel.

---

1. The attorney who represented Lang at trial did not represent him in this habeas corpus proceeding.

His appeal raises this question: Under state and federal constitutions what is the appropriate standard for determining if a criminal defendant has been denied his right to the effective assistance of counsel? The habeas justice applied the "mockery-of-justice" standard, which he correctly perceived to have been the law in Maine.[2]

■ The time has come, however, for us to reject that standard in favor of a "reasonably competent assistance" standard.[3] This is not the same as errorless representation. Under the standard we now adopt the inquiry is two-fold: (1) Has there been serious incompetency, inefficiency or inattention of counsel—performance by counsel which falls measurably below that which might be expected from an ordinary fallible attorney? (2) Has such ineffective representation by counsel likely deprived the defendant of an otherwise available substantial ground of defense? *Commonwealth v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878, 883 (1974).

We vacate the order denying the petition for a writ of habeas corpus and, because it is a factual question, we remand for application of the standard enunciated herein to the evidence adduced at the hearing in Superior Court.

On May 3, 1978, as Robert Lang's trial began, from a panel of twenty-eight jurors, twelve were drawn to sit at his trial. Four of these jurors also sat at a trial beginning and ending the previous day and involving a charge of unlawful sexual contact in violation of 17–A M.R.S.A. § 255(1)(A). In the prior trial the jury found that defendant guilty.

In Piscataquis County the Superior Court schedules on a trailing calendar[4] the cases that will be heard during each session. The court calendar for the May session listed eight cases as scheduled for May 2. The cases listed first and second were *State v.*

*Carl A. Nelson*, Me., 399 A.2d 1327 (1979), involving two charges of unlawful sexual contact, and *State v. Robert W. Lang, supra*, involving one charge of unlawful sexual contact. Defense counsel received before trial a copy of this court calendar. At the outset of Lang's trial the presiding justice conducted the voir dire of the prospective jurors *en banc*. He asked whether any of the prospective jurors had any acquaintance, close business or social dealings with, or any relation to the defendant, the alleged victim, the attorneys, or the potential witnesses; had any prior knowledge of the facts of this case; or had strong personal feelings about such a charge that would interfere with their ability to be fair and impartial. At the beginning of the voir dire examination the presiding justice introduced the prosecuting attorney to the jurors as having appeared before the panel on the previous day.

Neither the prosecutor nor the defense attorney requested additional questions of the jury, nor did either challenge any juror for cause. Counsel on both sides each exercised the eight peremptory challenges permitted by M.R.Crim.P. 24(c)(3). The Petitioner's trial attorney admits that he did not know of the prior service of four jurors in the trial of the unlawful sexual contact case which immediately preceded the Petitioner's trial; he was unaware of the guilty verdict reached in that case; and he did not base his lack of challenge to these jurors who had sat in the prior case on any trial strategy.

The habeas justice defined the problem at issue as:

"the defense counsel's failure to discover the prior jury service of the four jurors, perceive the potential for prejudice to the Petitioner arising from it, take effective steps in the voir dire examination to demonstrate the existence of prejudice, and to challenge those jurors peremptorily or for cause."

---

**2.** *See Bennett v. State*, 161 Me. 489, 499, 214 A.2d 667, 674 (1965).

**3.** *See United States v. Decoster*, 624 F.2d 196, 206 (D.C. Cir. 1979); *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978).

**4.** As each case on a trailing calendar is disposed of the next case on that calendar becomes in order for trial immediately.

In assessing on post-conviction review the adequacy of the representation provided at trial by the defense counsel, the habeas justice considered himself bound by the "mockery-of-justice" standard, first laid down by this court in *Bennett v. State*, 161 Me. 489, 214 A.2d 667 (1965), and most recently applied in *State v. Dutremble*, Me., 392 A.2d 42, 45 n. 5 (1978). Under that standard the habeas justice concluded that the representation afforded by defense counsel did not amount to no representation and did not render Lang's trial either a farce or sham.

We conclude that the standard of "reasonably competent assistance" is required by both the state and federal constitutions, and therefore we must remand for the habeas justice to determine whether, applying the appropriate standard, the Petitioner has on the facts of this case established his entitlement to relief.[5]

Article I, Section 6, of the Maine Constitution and the Sixth Amendment to the United States Constitution both guarantee to a defendant in a criminal prosecution the right to representation by counsel. *See Newell v. State*, Me., 277 A.2d 731, 737 (1971).

*Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), is the starting point in a line of decisions defining under the United States Constitution the right of indigent defendants in criminal prosecutions to appointed counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1932); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In *Gideon* the Court made the Sixth Amendment right to counsel applicable to the states by incorporation into the Fourteenth Amendment. Although we deal here with a case involving appointed counsel, the standard we enunciate applies with equal force to cases involving retained counsel.

The state action element of Fourteenth Amendment guarantees is satisfied by the state's appointment of counsel or conduct of a criminal trial. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

Each criminal trial involves different participants, different facts and different issues. A general standard for determining the effectiveness of representation by defense counsel must accommodate these differences. The standard must establish the minimum representation guaranteed by the Maine Constitution as well as by the Sixth Amendment. We define that standard as performance by counsel which falls measurably below that which might be expected from an ordinary fallible lawyer. *Commonwealth v. Saferian, supra.* Under such a standard the accused must additionally show that counsel's deficiency had a likely prejudicial effect on the outcome of his trial. *United States v. DeCoster*, 624 F.2d 196, 206 (D.C. Cir. 1979).[6]

█ Prior jury service on a similar but unrelated case does not automatically disqualify a prospective juror from service. *United States v. Tropeano*, 476 F.2d 586 (1st Cir.), *cert. denied*, 414 U.S. 839, 94 S.Ct. 90, 38 L.Ed.2d 75 (1973).

On remand, the Superior Court must determine whether counsel's failure at trial to learn of, and to take action regarding, the prior jury service of the four jurors had a likelihood of affecting the outcome of the Petitioner's trial.[7]

The entry, therefore, will be:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

5. The habeas justice volunteered his belief that "such representation falls short of the lower parameter of 'the range of competence demanded of attorneys in criminal cases'," but did not have occasion to consider the consequences of that deficiency.

6. *See generally* Rotatori, *DeCoster III: New Issues In Ineffective Assistance of Counsel*, 71 Journal of Criminal Law and Criminology 275 (1980).

7. For a case testing the effect, not of defense counsel's failure to ask certain questions, but of a juror's withholding of certain answers, *see Lewisohn v. State*, Me., 433 A.2d 351, 354 (1981).