Wayne L. DOUCETTE

v.

STATE of Maine.

Supreme Judicial Court of Maine.

Argued June 7, 1983.

Decided Aug. 3, 1983.

Curtis, Thaxter, Lipez, Stevens, Broder & Micoleau, Charles J. Micoleau (orally), Joseph Albanese, Portland, for plaintiff.

William R. Stokes (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ.

ROBERTS, Justice.

Wayne Doucette appeals from the denial of his post-conviction petition by the Superior Court, Cumberland County. Doucette contends, *inter alia,* that the post-conviction court erred in deciding that he was not deprived of effective assistance of defense counsel. We affirm the judgment of the Superior Court.

I. *Procedural and Factual Background*

In June of 1977, Doucette was indicted for rape, Class A, 17–A M.R.S.A. § 252(1)(B) (1983). In December of 1977, Doucette was convicted after a jury trial at which Doucette was represented by retained counsel. Doucette was sentenced to serve twelve years in the Maine State Prison. At that time, Doucette retained new

counsel who appealed the judgment to the Law Court. No post-conviction motions were filed by either counsel. On November 28, 1978, we affirmed the judgment entered in Superior Court. *State v. Doucette,* 398 A.2d 36 (Me.1978). Our opinion summarized the facts which led to Doucette's conviction:

> The [victim, a deaf mute,] and her fifteen-year-old sister were walking home along Main Street in Westbrook when for the first time they encountered the twenty-year-old defendant and his companion, Arthur Gallant. After a brief chat with the victim's sister, Gallant suggested that they smoke a marihuana cigarette. The young women acquiesced, and they all began walking toward a wooded area nearby. Finding a suitably secluded spot some distance from the street, the foursome shared the "joint," each taking two or three puffs. That done, they paired off for the walk back to the street. The sister and Gallant were in front; the [victim] and the defendant were in the rear. After a short while, the sister noticed that the defendant and the [victim] were no longer behind her. Growing increasingly concerned, she rejected Gallant's amorous advances and insisted that they return to the woods to locate the missing couple.
>
> Meanwhile, the defendant and the [victim] had made their way to a different spot in the woods. There, the defendant began kissing and fondling the [victim] and, after a while, succeeded in removing her pants and undergarments. The [victim] struggled and protested with increasing fervor as the defendant became more forceful and more intimate. Her strength proved insufficient, however, and the defendant eventually succeeded in penetrating her with his penis. At this, she cried out, making a noise that "sounded like a scream."
>
> Running in the direction of the "scream," the sister at last discovered the [victim] naked from the waist down lying on her back with the defendant, in a similar state of undress, face-to-face on top of the victim. The sister yelled at the defendant to get off and, when he ignored her, began hitting him. Finally, the defendant stood up, pulled up his pants, and walked off.
>
> . . . .
>
> A medical examination, which took place soon after the event, revealed that the victim's hymen had been partially ruptured.

*Doucette,* 398 A.2d at 37–38.

In August of 1981, Doucette filed *pro se* a petition for post-conviction review pursuant to 15 M.R.S.A. §§ 2121–2132 (Supp.1982–1983), alleging that he had been denied effective assistance of trial and appellate counsel. Subsequently, the attorney who was appointed to represent Doucette amended the petition to include several specific claims of ineffective representation.

In December, 1981, an evidentiary hearing was held in Superior Court, Cumberland County. Later, the court approved a stipulation by counsel regarding admission of evidence. On August 11, 1982, the Superior Court denied the petition. Doucette filed a timely notice of appeal and application for a Certificate of Probable Cause. The certificate was granted.

## II. *Claims of Ineffective Assistance of Counsel*

■ In *Lang v. Murch,* 438 A.2d 914 (Me.1981), we articulated the "reasonably competent assistance" standard for determining claims of ineffective assistance of counsel. Under that standard, counsel's performance must fall "measurably below that of an ordinary fallible attorney," *id.* at 915, 916, and counsel must have "likely deprived the defendant of an otherwise available substantial ground of relief." *Id.* at 915. "The standard does not lend itself to categorical rules but rather is meant to be applied on a case-by-case basis. . . ." *True v. State,* 457 A.2d 793, 795 (Me.1983) (citing *United States v. DeCoster,* 624 F.2d 196, 203 (D.C.Cir.1976)). Each claim, therefore, will be examined separately to determine whether the post-conviction findings were

"clearly erroneous." *True,* 457 A.2d at 795 (citing *Lewisohn v. State,* 433 A.2d 351, 354 (Me.1981); *Smith v. State,* 432 A.2d 1246, 1247 (Me.1981)). Any finding not specifically articulated will be presumed to be consistent with the Superior Court's decision. *True,* 457 A.2d at 795.

### A. *Failure to Interview Key Witnesses*

We first address Doucette's claims that defense counsel failed to interview Arthur Gallant and the victim. We consider each claim separately. The evidence at trial indicated that Gallant was with Doucette, the victim, and the victim's sister on the evening in question. Gallant and the sister had separated from Doucette and the victim. The sister, insisting upon locating the other couple, left Gallant. Gallant did not follow her. The sister discovered Doucette with the victim.

After the incident, Gallant made a statement to the police. The post-conviction justice found that the statement contained Gallant's local address. In addition, the justice noted that in the statement, Gallant said that according to the sister, the victim "liked sex." The police officer testified that at the time he made the statement Gallant described himself as "spacey," as a result of his smoking and drinking.

Defense counsel never contacted Gallant. He "requested that [Doucette] have Arthur Gallant write or telephone him." Doucette was not incarcerated at that time. At the post-conviction hearing, defense counsel testified that he believed that it was not his duty to "chase" Gallant and that Gallant would be more helpful if Doucette rather than counsel were to contact him. Finally, he insisted that he had wanted to interview Gallant.

Doucette provided counsel with Gallant's Massachusetts address. On subsequent meetings, counsel asked Doucette if he had any previous contact with Gallant. Doucette replied that he had not had any contact with Gallant and did not provide counsel with any further information.

The post-conviction justice ruled that "even if this deficiency constituted a breach of the first prong of *Lang,* the petitioner has failed to prove a likely prejudicial effect on the trial outcome. At most, Gallant could have impeached the testimony of the victim's sister." According to the justice, Gallant did not have any exculpatory information. The justice further noted the absence of evidence that defense counsel "could have, in the exercise of reasonable diligence, located Gallant and secured his presence as a witness."

Defense counsel has a duty to conduct a reasonable amount of pretrial investigation. *E.g., Washington v. Strickland,* 693 F.2d 1243, 1251 (5th Cir.1982); *DeCoster,* 624 F.2d at 209. This includes a duty to interview witnesses who have information relevant to the case. 624 F.2d at 209. Although he was not an eyewitness to the alleged crime, Gallant was the only potential defense witness that was with the group that evening. Counsel agreed that Gallant may have had relevant information. Counsel properly asked Doucette to find Gallant. Counsel, however, was not fully absolved of his duty to find and to interview Gallant. *Cf. Hines v. Enomoto,* 658 F.2d 667, 676 (9th Cir.1981) (petitioner assured counsel that he would find witness); *Hall v. State,* 408 A.2d 287, 288 (Del.1979) (petitioner assured attorney that witnesses would appear at trial). Counsel was supplied with two of Gallant's addresses but made no attempt to contact Gallant. Instead, he relied completely upon Doucette. Even if this conduct falls measurably below that of an ordinary fallible lawyer thereby satisfying the first step in the *Lang* analysis, we agree with the post-conviction justice that counsel's performance was not prejudicial. *See Washington v. Watkins,* 655 F.2d 1346, 1360–64 (5th Cir.1981); *Williams v. United States,* 421 A.2d 19, 25–26 (D.C.App.1980); *see also Commonwealth v. Bandy,* 494 Pa. 244, 249, 431 A.2d 240, 243 (1981).

To show prejudice, under the circumstances of this case, the petitioner must

demonstrate both Gallant's availability for trial and the nature of Gallant's testimony. *Williams,* 421 A.2d at 25; *see DeCoster,* 624 F.2d at 211; *People v. Greer,* 79ˈIll.2d 103, 121–125, 37 Ill.Dec. 313, 323–324, 402 N.E.2d 203, 212–13 (1980); *see also State v. Mehralian,* 301 N.W.2d 409, 416 (N.D.1981) (petitioner failed to name or demonstrate how any potential witnesses, who could have been called to testify, could have testified in his favor). The petitioner failed to show that Gallant could have been located and available for trial. Indeed, Doucette testified that he has not been in contact with Gallant since that evening. Moreover, the only suggestion as to the nature of his testimony is contained in the statement he made to the police. That statement merely indicated the possibility of impeaching the sister's testimony. In view of Gallant's description of himself as "spacey," the weight to be given his testimony would be speculative. The petitioner, therefore, failed to prove that his defense was prejudiced by counsel's failure to interview Gallant.

■ As for the claim regarding counsel's failure to interview the victim, we conclude that the post-conviction justice's finding that such conduct did not constitute ineffective assistance of counsel was not clearly erroneous. Defense counsel did see the videotaped interview of the victim made by the police department. He believed it provided sufficient information. The post-conviction justice found that "while this may not have been the most cautious or prudent decision for counsel to make, ... it was a legitimate exercise of discretion." A videotape interview by the police department may serve as a substitute of defense counsel's interview of the victim. *See Goodwin v. Hopper,* 243 Ga. 193, 194, 253 S.E.2d 156, 158, *cert. denied,* 442 U.S. 947, 99 S.Ct. 2896, 61 L.Ed.2d 319 (1979); *see also Williams v. State,* 599 S.W.2d 276, 279 (Tenn.Cr.App.1980).

B. *Failure to Object to Trial Interpreter*

Doucette claims that counsel failed to investigate the relationship between the victim and the interpreter. Eva Cutler, age 50, was employed by the Governor Baxter School for the Deaf as a house parent to the dormitory in which the victim lived during the 1967 to 1968 school year. After that period, she had no special relationship with the victim but she did interact, on a limited basis, with the victim as she did with all of the other students, in her work as a supervisor of the residential program at the school.

Immediately after the incident, the Westbrook Police Department requested that Cutler interpret the victim's story. One of these sessions was videotaped. Cutler was also asked to be the interpreter at trial, having served as an interpreter in court on several previous occasions. Cutler, however, does not belong to the registry of interpreters. Defense counsel testified that he thought of requesting another interpreter, but when he saw the videotapes, he was convinced that she was not biased or was not misstating any questions. Counsel did not believe that Cutler's prior contact with the victim affected her interpretation.

Before trial, the court asked counsel whether they agreed that Cutler was qualified to conduct the interpretation. Counsel so agreed. During trial, before the victim testified, the court questioned Cutler about her qualifications. The oath was then administered to her. She testified at the post-conviction hearing that her prior relationship with the victim did not affect the accuracy of her interpretation. Further, she testified that she interpreted what the victim was saying to the best of her ability.

On direct appeal, Doucette claimed that the presiding justice violated M.R.Crim.P. 28 [1] by not appointing a disinterested interpreter. We held that not only was the issue not preserved for appellate review but also

1. M.R.Crim.P. 28 provides:
    The court may appoint a disinterested interpreter of its own selection and may determine the reasonable compensation of such interpreter and direct its payment by the county in which the case is pending. Interpreters shall be appropriately sworn.

that the allegation of bias on Cutler's part was "extremely dubious." *Doucette,* 398 A.2d at 40. The post-conviction justice found that the trial justice knew about the prior relationship between the victim and the interpreter and that the justice permitted her to interpret under his "watchful guidance" and "no conduct on her part in any way prejudiced the petitioner." In addition, he concluded that the "meager additional evidence" submitted in this post-conviction petition that was not provided to the Law Court was insufficient to meet the petitioner's burden of proof.

The court's findings are supported by the record. There is nothing in the record to suggest that defense counsel had any reason to investigate the relationship between the interpreter and the victim. Although Cutler knew the victim and worked at the school the victim attended, there is no evidence that this prior relationship affected her interpreting. In fact, Cutler testified that her prior association with the victim did not affect the performance of her duties and that she interpreted the testimony to the best of her ability. Similarly, in *Hyman v. State,* 338 So.2d 448 (Ala.Cr.App.1976), the court upheld the trial court's ruling that the teacher of a deaf mute witness could interpret the testimony. *Id.* at 453. In addition, even related persons are not necessarily disqualified to interpret at trial. *See Fairbanks v. Cowan,* 551 F.2d 97 (6th Cir.1977) (father of victim interpreted testimony); *Kay v. State,* 260 Ark. 681, 543 S.W.2d 479 (1976) (son of victim interpreted testimony).

## C. *Failure to Utilize Written Statements*

Doucette asserts that defense counsel failed to use the victim's written statement to impeach her trial testimony and failed to use the doctor's report during cross-examination of the doctor. The evening of the incident, the victim gave a written statement in which she stated that the defendant "wanted to rape" her, "want to get in my vagina. He hurt me." In the videotaped interview, the victim clearly stated

that the petitioner had penetrated her vagina with his penis. At trial, she reasserted that they had sexual intercourse. Defense counsel testified that he believed that the written statement "stops short" in describing what happened. The post-conviction justice ruled that because the victim gave further explanation in the videotaped interview, it was "clearly a legitimate trial tactic not to utilize the written statement in cross-examining the [victim], and thereby invite rehabilitation . . . ." The victim's videotaped interview contained a description of the sexual intercourse which was consistent with her trial testimony.

Dr. Keene who performed a physical examination on the victim after the incident in question filed a report in which he wrote: "Apparently assault in wood at about 5:30 p.m. today. Attacker attempted penetration but did ? not fully penetrate." At trial the doctor testified that his observations during the examination were "consistent only with forcible intercourse of some kind or forcible insertion of some object in the vagina." On cross-examination, the doctor testified that there was no evidence of semen and that it was possible for a man's finger to break the hymen. At the post-conviction hearing, defense counsel testified that he did not introduce the written report because he believed that during cross-examination of the doctor, he had covered the information on the report. The court concluded that defense counsel adequately cross-examined the doctor.

Both of these challenges seek to attack defense counsel's trial strategy. Because trial strategy involves the "highest levels of professional judgment" based upon "counsel's knowledge, training, experience, and wisdom," we award great deference to counsel in making those tactical decisions. *True,* 457 A.2d at 796. We therefore review any questions involving strategy to determine whether such strategy was manifestly unreasonable, that is, the strategy resulted in a loss of a substantial ground of defense. *Commonwealth v. Rondeau,* 373 Mass. 408, 411–13, 392 N.E.2d 1001, 1003–04.

■ The post-conviction finding regarding defense counsel's trial decision not to introduce the victim's written statement was supported by the record and the trial strategy is not manifestly unreasonable. Defense counsel could have reasonably believed that the written statement was merely an incomplete version of the victim's story which she expanded upon in the videotaped interview. The record clearly supports the court's finding that counsel's decision not to use the written statement while cross-examining the victim was a justifiable trial tactic.

■ With regard to the doctor's report, the post-conviction finding is not clearly erroneous. During the cross-examination, defense counsel elicited from the doctor any doubt that he might have felt as to whether the victim had been raped. Moreover, penetration, however slight, constitutes rape. *See State v. Pratt,* 309 A.2d 864, 865 (Me.1973) (sodomy); *State v. Pratt,* 151 Me. 236, 238, 116 A.2d 924, 925 (1955) (per curiam) (crime against nature).

### D. *Failure To Make Timely Post-Conviction Motions*

■ The petitioner claims that trial and appellate counsel's failure to make post-conviction motions to acquit or for a new trial constituted ineffective assistance of counsel. The post-conviction justice denied relief based on that claim. Because the standard for appellate review remains the same regardless of whether these motions had been filed, failure to make the motions does not constitute a sufficient basis for post-conviction relief. *State v. Van Sickle,* 434 A.2d 31, 34–35 (Me.1981); *see State v. Call,* 322 A.2d 64, 67 (Me.1974); *State v. Pullen,* 266 A.2d 222, 230–31 (Me.1970).

### E. *Failure to Raise a Fifth Amendment Issue*

■ The petitioner claims that defense counsel's failure to raise a fifth amendment issue constituted ineffective assistance of counsel. No *Miranda* issue was raised at trial. At the post-conviction hearing, de-

fense counsel indicated that he could not remember asking Doucette about the *Miranda* warnings but that it was his normal procedure to do so. Appellate counsel, testified that he and defense counsel never discussed the *Miranda* issue, even though the trial transcript indicated that the officer did not testify as to the exact timing of the *Miranda* warning relative to Doucette's statement.

The post-conviction justice ruled that the claim was waived pursuant to 15 M.R.S.A. § 2128(1). Alternatively, he found as a fact that Doucette had been accorded all the *Miranda* safeguards. We need not decide nor do we intimate any opinion on the question whether the claim was waived under section 2128(1). We hold that credible testimony adequately supports the post-conviction finding that Doucette was given adequate *Miranda* protection. An officer testified that he gave the *Miranda* warnings on three occasions before Doucette made any admissions. Doucette was not under arrest and he testified that he voluntarily went to the police station. No rights of the defendant were lost by defense counsel's failure to explore the fifth amendment issue at trial.

We have carefully reviewed all other issues raised by the petitioner including the evidentiary ruling made during the post-conviction hearing. Because we conclude that his contentions are without merit, we affirm the judgment entered in the Superior Court.

The entry is:

Judgment affirmed.

All concurring.