**Paul LINDSEY**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued June 6, 1983.

Decided Aug. 5, 1983.

See also, Me., 447 A.2d 794.

Strout, Payson, Pellicani, Cloutier, Hokkanen, Strong & Levine, James W. Strong (orally), Rockland, for plaintiff.

Wayne S. Moss (orally), Fernand R. LaRochelle, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., NICHOLS, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

The Superior Court (Penobscot County) granted Paul Lindsey's petition for post-conviction relief, vacating his criminal conviction and ordering a new trial on the basis of ineffective assistance of counsel at trial. The State appeals, arguing that the court erred in finding that petitioner was deprived of an otherwise available substantial ground of defense. We sustain the appeal and reverse the judgment of the Superior Court.

Petitioner was convicted of criminal threatening with a dangerous weapon in violation of 17–A M.R.S.A. §§ 209, 1252(4) (1983) and sentenced to a two-year term of imprisonment.[1] His conviction was affirmed on direct appeal to this Court. *State v. Lindsey,* 447 A.2d 794 (Me.1982). The present petition for post-conviction review was filed thereafter, in which petitioner sought relief on a claim of ineffective assistance of counsel. After hearing, the post-conviction justice found that trial counsel had failed to interview "several witnesses ... whose testimony would have had real probability of placing in serious doubt

---

1. The two-year sentence was to run consecutively with sentences previously imposed in separate criminal proceedings.

the evidence that Petitioner had threatened ... [the victim] twice before" and "one witness [who] gave creditable evidence that would place doubt on whether Petitioner had owned a 'long barrelled' shot gun at the time." Accordingly, the justice concluded that petitioner was entitled to relief under the standard adopted in *Lang v. Murch*, 438 A.2d 914 (Me.1981).

The relevant facts may be summarized as follows: At the original trial for criminal threatening, the victim, Constance DeWitt, who had been a witness in a separate criminal proceeding brought against the defendant, testified that on December 19, 1976, at approximately 3:45 to 4:00 p.m., she was sitting in her house in front of a picture window when her brother-in-law exclaimed, "There's Paul [Lindsey] in front of the house." Mrs. DeWitt, who admitted not knowing much about guns, turned around in her chair and saw petitioner sitting in his automobile pointing what she thought was a long-barrelled gun at her. Mrs. DeWitt's sister, brother-in-law and husband, all testified that they were present and saw petitioner sitting in his automobile pointing a gun at the house.

The victim and her husband also testified at the original trial about two incidents in which petitioner had threatened them with his car just prior to the date of the offense. Mrs. DeWitt testified that she thought, but was not positive, that the first incident occurred on the Thursday afternoon or evening immediately preceding Sunday, December 19th and that she was positive that the second incident occurred on Saturday, December 18, at approximately 7:30 p.m. Her husband testified that the first incident occurred early Friday afternoon but agreed with his wife's testimony as to the second incident.

Petitioner's wife was called as the sole defense witness at the original trial. With respect to the two incidents prior to December 19, she testified that they could not have occurred since she and petitioner were in court at all relevant times on that Thurs-

day and Friday. She also testified that at all relevant times on that Saturday, she and petitioner were in Bangor at the home of petitioner's brother-in-law and sister-in-law, some ten miles from the scene of the alleged incident, after having been involved in a car accident. In addition, she testified that although petitioner had at one time owned a shotgun, he had sold it on the Friday or Saturday night immediately preceding Sunday, December 19.

At the post-conviction hearing, petitioner's brother-in-law testified in rather uncertain terms that the petitioner was at his house one afternoon, after having been involved in a car accident. Petitioner's brother testified with no more certainty that he remembered seeing petitioner at the brother-in-law's house on the Saturday in question. In addition, the brother testified that he and petitioner went shooting with petitioner's "sawed-off shotgun" on the morning of Sunday, December 19. It is upon this testimony that the post-conviction justice relied in finding that petitioner had been deprived of an otherwise available substantial ground of defense because of defense counsel's failure to investigate and interview witnesses.

■ In *Lang v. Murch*, 438 A.2d 914 (Me.1981), this Court adopted the "reasonably competent assistance standard" for evaluating claims of ineffective assistance of counsel. Under that standard, the habeas justice is required to make a two-fold inquiry:

(1) Has there been serious incompetency, inefficiency or inattention of counsel—performance by counsel which falls measurably below that which might be expected from an ordinary fallible attorney?
(2) Has such ineffective representation by counsel likely deprived the defendant of an otherwise available substantial ground of defense?

*Id.* at 915.[2]

In the present case, in vacating petitioner's conviction, the court first focused upon

2. The State does not challenge the court's find-     ing that the performance of defense counsel in

the fact that defense counsel deprived petitioner of a substantial ground of defense in failing to discover and elicit testimony from petitioner's brother and brother-in-law, which might have placed "serious doubt" upon the evidence that petitioner had twice before threatened the DeWitts. The court considered those incidents to be of critical importance, presumably relying on this Court's decision in *State v. Lindsey,* 447 A.2d 794 (Me.1982), wherein the admissibility of the DeWitts testimony with respect to the two prior incidents of threatening was upheld because of its relevance in establishing (1) that the DeWitts "were subjectively and objectively justified in feeling fear when the defendant threatened them a third time," and (2) "that the defendant had acted as charged, knowingly." *Id.* at 796. Although this Court ruled that the evidence of the two prior incidents was relevant with respect to the elements of the crime charged, we did not hold that such evidence was critical to the State's case. In fact, we noted that there was ample *direct* evidence of the crime charged:

> Four eyewitnesses testified at trial. Each independently asserted that the defendant had pointed a gun at the DeWitts' home on the afternoon of December 19, 1976. *Thus, substantial evidence of the crime charged against the defendant existed in addition to the DeWitts' testimony that defendant had previously threatened them.* The danger of unfair prejudice to the defendant as a result of admitting the challenged evidence was therefore slight at best.

*Lindsey,* 447 A.2d at 796 (emphasis added). The record of the post-conviction hearing

further reflects that with respect to the first alleged incident, petitioner's wife was the only person in a position to rebut the DeWitts' testimony, and she did so testify at trial. Her post-conviction testimony provided no new exculpatory evidence. Moreover, those witnesses called by petitioner at the post-conviction hearing to establish an alibi with respect to the second alleged incident were unable to recollect with any specificity the events in question and merely acknowledged the possibility of those events as put forth by petitioner's leading questions. In this regard, the record does not support the finding that petitioner was deprived of an otherwise available substantial ground of defense.

The habeas justice also focused on the fact that "one [post-conviction] witness gave creditable evidence that would place doubt on whether Petitioner had owned a 'long barrelled' shot gun at the time" and that defense counsel's failure to conduct a pre-trial interview of that witness deprived petitioner of an otherwise available substantial ground of defense. It is apparent that the witness referred to by the court was petitioner's brother. He testified that on the morning of the day that the DeWitts were allegedly threatened with a *long-barrelled* shotgun, he and petitioner had gone shooting with petitioner's *sawed-off* shotgun. The testimony would have afforded a defense to the extent that his testimony would have refuted the fact that petitioner had a *long-barrelled* shotgun at the time of the incident.

■ Although the brother's post-trial testimony was not known to counsel before

this case fell measurably below that which might be expected from an ordinary fallible attorney. The record contains ample support for that finding. Petitioner retained Harvey Bower, Esq., a member of the Massachusetts bar to represent him. He met with Mr. Bower twice before trial. Two days before trial was scheduled to begin, Mr. Bower telephoned petitioner and told him that he could not be in attendance and that defendant should seek a continuance. The prosecution refused to agree to a continuance and Mr. Bower then sent his associate, Mr. Joseph J. DiPersia, Jr., to con-

duct the trial for the defense. Prior to trial, neither counsel interviewed any witnesses other than petitioner and his wife. In addition to the two meetings with petitioner, the defense effort consisted of the filing of various pre-trial motions, using forms developed for practice in Massachusetts. Mr. DiPersia arrived in Bangor at 10:30 a.m. for a trial scheduled to commence at 9:00 a.m. At the post-conviction hearing, petitioner's brother and brother-in-law testified that they had never been contacted nor interviewed by counsel.

 

trial, both he and petitioner testified at the post-conviction review hearing that he had advised petitioner against introducing evidence that petitioner had possessed a sawed-off shotgun. Despite the fact that counsel has a duty to conduct a reasonable amount of investigation, *Pierce v. State,* 463 A.2d 756, 759 (Me.1983), the decision not to elicit testimony concerning the sawed-off shotgun was a matter of trial strategy which has not been shown to be manifestly unreasonable. *See True v. State,* 457 A.2d 793, 796 (Me.1983). Testimony concerning possession of a sawed-off shotgun could well have implicated petitioner with respect to another crime. Additionally, such testimony would have contradicted the trial testimony of petitioner's wife since she had testified that he had sold his shotgun just prior to the alleged incident. Even in the absence of strategic considerations, however, whether petitioner had only a sawed-off shotgun or a long-barrelled shotgun was not critical to the case. Mrs. DeWitt, the principal eyewitness, testified at trial that she didn't know much about guns, and could only be sure that the gun she saw "wasn't a pistol." The testimony of the brother would not have afforded a substantial ground of defense.

■ The habeas justice assessed the significance of the testimony which would have been available had there been proper investigation, in the following terms:

> Whether their testimony would have altered the jury verdict is speculative, of course, but it certainly would have furnished a more substantial argument than the rather fragile and uncorroborated testimony of Mrs. Lindsey. In short, that testimony would have provided at least a 'substantial ground' of defense as opposed to the rather porous defense that was offered.

Under the test adopted in *Lang,* "the burden is clearly on the defendant to make the initial showing that there was deficiency in the performance of trial counsel, and that this deficiency likely influenced the outcome of the trial." *True,* 457 A.2d at 797.

We find that the habeas justice erred as a matter of law in concluding that petitioner satisfied this latter burden. The deficiency in the performance of his counsel did not deprive him of a substantial ground of defense.

The entry is:

Judgment reversed.

All concurring.