## Mark F. CONNER

### v.

## STATE of Maine.

Supreme Judicial Court of Maine.

Argued May 10, 1988.

Decided June 29, 1988.

Mazziotti, Russell & Altshuler, Kenneth P. Altshuler (orally), Portland, for plaintiff.

James E. Tierney, Atty. Gen., Joseph E. Wannemacher, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

Mark F. Conner appeals from the judgment of the Superior Court, Cumberland County, denying his petition for post-conviction review after an evidentiary hearing. Petitioner contends that he was denied effective assistance of counsel in the underlying jury trial and in his sentencing. We affirm the judgment.

### I.

On November 20, 1980, a jury found Mark Conner guilty of the murder of Anthony Piacentini. The facts of the case pertinent to this decision are summarized in

---

*State v. Conner*, 434 A.2d 509 (Me.1981) as follows:

> The elderly victim, Anthony Piacentini, worked in April, 1979, as manager of Pine Tree Billiards in Portland. The defendant testified to the following: On the morning of April 18, the defendant went armed to Pine Tree Billiards in order to "get some money." When the defendant first entered, both the victim and another man were present. The defendant stood in the doorway a while, then left at the same time as the other man. Shortly thereafter the defendant returned, pulled out a gun, cocked it, and entered Pine Tree Billiards. He told the victim that it was a hold-up, and ordered the victim to lie down. The defendant testified that his hand was shaking and the next thing he knew the gun went off. The victim fell to the floor and started moaning. The defendant took the victim's wallet from his person and left. The defendant was not wearing a mask, and had been at Pine Tree Billiards ten or fifteen times before. The defendant then went to the apartment of Arthur Logan.
>
> Logan testified that the defendant told him "that he shot [the victim] because he—[the defendant] said the man was reaching in the back of his pocket, so [the defendant] thought probably the man had something too." Other witnesses testified that on two other occasions the defendant said that he thought that the victim was reaching for a gun. Witnesses also testified that the defendant was calm after the shooting, slept the afternoon, went out to a local dance establishment and played pool later that evening.

434 A.2d at 510–511 (brackets in original).

At trial, Conner's attorney admitted that Conner shot and killed the victim. However, he argued that Conner's gun had fired accidentally because of his nervousness, and that the petitioner therefore lacked the requisite mental state to be guilty of murder. Counsel chose not to emphasize to the jury that the petitioner had ingested "Black Beauties" (an amphetamine) before the shooting.

Upon Conner's conviction, a pre-sentence investigation was ordered by the trial justice. The pre-sentence report erroneously stated that two outstanding felony charges of armed robbery and theft by receiving were pending against the petitioner. In fact, those two charges had been dismissed. In the petitioner's favor, two charges on which he had been convicted, larceny and unarmed robbery, were omitted from the report. On December 5, 1980, following a hearing, the petitioner was sentenced by the trial justice to imprisonment for a term of forty years. Petitioner appealed both his conviction and the sentence. We affirmed the conviction in *State v. Conner*, 434 A.2d 509 (Me.1981), and the Appellate Division denied petitioner's appeal of sentence.

On February 25, 1985, Conner filed a petition for post-conviction review. In his petition, Conner alleged, inter alia, that his attorney was ineffective at trial because he (1) failed to develop defenses based on petitioner's drug abuse, and (2) failed to move for a correction of sentence. Following a hearing, Conner's petition was denied, and on January 19, 1988, we granted a certificate of probable cause permitting petitioner to proceed with his appeal of that denial.

## II.

In determining whether the petitioner was denied effective assistance of counsel, we apply the "reasonably competent assistance" standard set forth in *Lang v. Murch*, 438 A.2d 914 (Me.1981):

> (1) Has there been serious incompetency, inefficiency or inattention of counsel—performance by counsel which falls measurably below that which might be expected from an ordinary fallible attorney?
>
> (2) Has such ineffective representation by counsel likely deprived the defendant of an otherwise available substantial ground of defense?

438 A.2d at 915. We review the conclusions of the post-conviction court as to the effectiveness of trial counsel under the "clearly erroneous" test and will not overturn the court's determination unless there

is no competent evidence to support it. *True v. State,* 457 A.2d 793, 795 (Me.1983); *see Kimball v. State,* 490 A.2d 653, 657 (Me.1985).

In his first argument, petitioner contends that his trial attorney was ineffective in failing to develop defenses based upon his drug abuse. The two related defenses suggested by petitioner are (1) an intoxication defense—that the petitioner would not have been able to formulate either the "intentional" or "knowing" state of mind required to establish the crime of murder, and (2) a "shaking hand" defense—that the petitioner fired the gun accidentally because his hand was shaking due to drug use.

In its order stating that counsel was not ineffective in failing to argue defenses concerning petitioner's drug abuse, the post-conviction court stated:

At [the] hearing Petitioner's trial counsel stated that he was aware of the drug abuse issue but chose not to accentuate it because there was a substantial body of evidence—including Petitioner's own version of events—which suggested that he engaged in thoughtful, deliberate conduct at least as regards the robbery. This evidence would contradict a theory of voluntary intoxication. Further, trial counsel felt that testimony concerning illegal drug use might operate to Plaintiff's [sic] prejudice rather than contribute to a viable defense.

The court's decision is supported by competent evidence. The defendant's trial attorney essentially testified that he made a tactical decision to minimize any mention of drugs and felt that it was not a viable defense to argue that drugs could have affected the petitioner's state of mind or motor control. Such tactical decisions are accorded substantial deference on review and will constitute ineffective assistance only when shown to be "manifestly unreasonable." *True,* 457 A.2d at 796. There is nothing to indicate that trial counsel's tactical decisions concerning petitioner's drug use fell below that standard or that his performance was otherwise deficient.

In his second argument, petitioner essentially contends he was deprived of effective assistance of counsel by his attorney's failure to address mistakes in the pre-sentence report by moving for a correction of sentence. *See* M.R.Crim.P. 35. Since sentencing is a critical stage of a criminal proceeding, and a defendant is constitutionally entitled to counsel, he is also entitled to effective assistance of counsel during the sentencing process. *Stack v. State,* 492 A.2d 599, 602 (Me.1985). In its order, the post-conviction court did not specifically address the issue of the attorney's effectiveness in his choice of action concerning the mistakes in petitioner's pre-sentence report. Instead, the court focused on the merits of whether petitioner was prejudiced by the report's errors. However, since "we attribute to the habeas justice any findings necessarily involved in his decision, even though not articulated," we assume that the post-conviction court determined that trial counsel was not ineffective in this regard. *True,* 457 A.2d at 795.

At the post-conviction review hearing, defendant's trial attorney testified that he learned of the mistakes in the pre-sentence report only after sentencing. He also testified that he understood that the mistakes had been brought to the trial court's attention and that the trial court indicated that the errors made no difference in the sentencing. Although it may have been preferable for defendant's attorney to have raised the issue of the mistakes and their potential effect on the sentence by moving for a sentence correction, this omission does not constitute ineffective representation under the first prong of the *Lang* standard since it does not demonstrate "serious incompetency" or conduct falling "measurably below that which might be expected from an ordinary fallible attorney." *Lang,* 438 A.2d at 915.

Even if the attorney's representation were considered ineffective under the first prong of *Lang,* the petitioner did not meet the requirements of the second prong since he failed to establish that he was prejudiced by the allegedly ineffective representation. At the post-conviction hearing, the

parties agreed to submit a letter from the trial justice explaining how inaccuracies in the pre-sentence report might have affected his sentencing of the petitioner. That letter stated in part:

> While it assuredly had some impact on my consideration of the defendant's exposure to the criminal justice system, my recollection is that it had little or no effect on the aggravating circumstances usually considered to enhance punishment. That is because I do not believe such unresolved criminal charges are a sufficient basis to warrant support for increased imposition of time.

Presented with an apparent conflict between the letter and the sentencing transcript that suggested enhancement of sentence based on the inaccuracies, the post-conviction court gave greater weight to the evidence presented in the letter and found that the petitioner was not prejudiced by the errors in the pre-sentence report because the trial justice had not considered the "unresolved" erroneous charges as aggravating circumstances. We do not find the post-conviction court's determination to be clearly erroneous, *see True*, 457 A.2d at 795, and see no reason to interfere with the prerogative of the fact-finder to decide which evidence is deserving of greater credence. *See State v. Lovejoy*, 493 A.2d 1035, 1037–38 (Me.1985). We therefore affirm the post-conviction court's conclusion that petitioner failed to establish that trial counsel's performance fell short of the standard set forth in *Lang*.

The entry is:

Judgment affirmed.

All concurring.