**Ellwood TWIST**

**v.**

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1992.

Decided Dec. 3, 1992.

Daniel J. Stevens (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for plaintiff.

Amy Homans (orally), Asst. Atty. Gen., Augusta, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Elwood Twist appeals from the denial of his post-conviction petition by the Superior Court, (Kennebec County, *Wathen, C.J.*), concluding that Twist failed to present sufficient evidence to support his allegations of ineffective assistance of counsel and unlawful sentencing. We affirm the judgment of the Superior Court.

## PROCEDURAL AND FACTUAL BACKGROUND

Twist was indicted in a 12–count indictment charging him with sexually abusing five children. Counts I and II of the indictment alleged violations of 17–A M.R.S.A. § 252 (1976) (Rape). Counts III, V, VII, IX and XI alleged violations of 17–A M.R.S.A. § 253 (1976) (Gross Sexual Misconduct). Counts IV, VI, VIII, X and XII alleged violations of 17–A M.R.S.A. § 255 (1979) (Unlawful Sexual Contact). After a jury-waived trial held in the Superior Court, (Kennebec County, *Brody, J.*), Twist was found guilty on the two rape counts, five counts of gross sexual misconduct and one of the five unlawful sexual contact counts. Twist was found not guilty on the other four counts of unlawful sexual contact. He was sentenced to a total of 85 years in prison. Twist filed a timely appeal to this court and also appealed his sentence. We vacated Twist's conviction on the two rape counts, affirmed the conviction on the remaining counts. *See State v. Twist,* 528 A.2d 1250 (Me.1987).

Twist subsequently filed a petition for post-conviction review and, after appointment of counsel, amended his petition for review. After hearing, the court denied the amended petition. We granted Twist's request for a certificate of probable cause and notice of appeal pursuant to 15 M.R.S.A. § 2131 (1981) and M.R.Crim.P. 76.

### I. *Claims of Ineffective Assistance of Counsel*

We have adopted the "reasonably competent assistance" standard for evaluating claims of the ineffective assistance of counsel. *See Doucette v. State,* 463 A.2d 741, 744–45 (Me.1983); *State v. Toussaint,* 464 A.2d 177, 179 (Me.1983); *Lang v. Murch,* 438 A.2d 914, 915 (Me.1981). Under this standard, which does not require the challenged representation be errorless,

**550**

counsel's performance is evaluated by a two-pronged inquiry: (1) whether counsel's performance falls measurably below the performance that might be expected of an ordinary, fallible attorney; and, if so, (2) whether counsel's substandard performance "likely deprived the defendant of an otherwise available substantial ground of defense." *State v. Jurek,* 594 A.2d 553, 555 (Me.1991) (citing *Lang,* 438 A.2d at 915). "Pursuant to this standard, the burden is on the defendant to show not only that trial counsel's performance was deficient but also that the deficiency likely affected the outcome of the trial." *Id.* "Failure to prove resultant prejudice precludes relief regardless of the quality of counsel's performance." *Id.* (citing *State v. Dafoe,* 463 A.2d 770, 775 (Me.1983)).

■ Appropriately, we are cautious in our evaluation of trial counsel's performance in order to avoid reaching a result based solely on hindsight. *See Toussaint,* 464 A.2d at 179. We accord trial counsel great deference in their tactical decisions and these decisions are reviewable solely for "manifest unreasonableness." *See Pierce v. State,* 463 A.2d 756, 759 (Me. 1983). Manifest unreasonableness occurs only when counsel's performance deprives the defendant of a substantial ground of defense.

■ "The standard does not lend itself to categorical rules, but rather is meant to be applied on a case-by-case basis...." *Doucette,* 463 A.2d at 744 (citations omitted). Each claim, therefore, must be examined separately to determine whether the post-conviction court's findings were clearly erroneous and unsupported by any competent evidence in the record. *See Jurek,* 594 A.2d at 555. Findings not specifically articulated by the post-conviction review court are presumed to be consistent with the Superior Court's decision. *See Doucette,* 463 A.2d at 744.

A. Failure to Call a Nurse Practitioner as a Witness or Introduce Into Evidence Hospital Records.

■ At trial, Jane Doe[1] offered the only direct evidence in support of Counts III and V (Gross Sexual Misconduct). During cross-examination at trial, Doe denied ever being asked by a nurse practitioner about sexual abuse by Twist. The nurse practitioner had examined Doe on two occasions and had prepared a written report following these examinations. At the post-conviction review hearing, the practitioner testified and her notes reflected that Doe had denied having been sexually molested by the petitioner.

At the post-conviction review hearing, trial counsel testified that prior to the original trial they had access to the records prepared by the nurse practitioner, and had tried to subpoena the nurse practitioner for the original trial but were told she was away on vacation. Trial counsel indicated that they believed the nurse practitioner's testimony would be of minimal value because Doe's denial that she had engaged in sexual acts with the petitioner occurred prior to the time formal allegations were made and they had other testimony of Doe's pretrial statements.

The testimony of the nurse practitioner and the medical records prepared by her would have challenged the trial testimony of Doe. There was, however, other testimony that Doe had denied, subsequent to Twist's indictment but prior to trial, being sexually abused by Twist. The failure to offer the testimony of the nurse practitioner and her records at trial did not deprive petitioner of an otherwise available substantial ground of defense. There was evidence impeaching Doe's testimony. Despite this evidence, the trial court found Doe's testimony to be credible. The review court found that trial counsels' decision not to introduce testimony from the nurse practitioner and her notes was not manifestly unreasonable. That finding was not clearly erroneous.

B. Failure to Appeal the Trial Court's Finding That a Six–Year–Old was Competent to Testify.

■ At trial, the videotaped testimony of a six-year-old was admitted over the objec-

1. A fictitious name.

tion of trial counsel. Trial counsel did not view the six-year-old's competency as a viable issue on appeal and did not appeal this particular issue trying to avoid "the shotgun approach to appeals." Given our strict standard of review regarding issues of admissibility of evidence, trial counsel made a well-reasoned tactical decision concerning what issues to appeal. We find ample evidence of the child's competency for the trial court to have found as it did.

### C. Failure to Object to or Appeal the Trial Court's Finding That a Five–Year–Old was Competent to Testify.

█ Twist argues that the five-year-old's testimony on voir dire that he did not know what a lie or a fib was essentially mandates a conclusion that he was incompetent. The trial court, however, through its own independent questioning of the five-year-old, found sufficient evidence to conclude the five-year-old was competent.

The post-conviction review court with regard to the five-year-old's testimony stated that "review of the in-court testimony of one of the child witnesses reveals that he was competent to testify, so that counsel's failure to challenge his competency was not manifestly unreasonable." This finding is not clearly erroneous and is supported by competent evidence in the record.

### D. Failure to Call R.T., M.B. and/or the Defendant to Testify.

The post-conviction review court found that, "[t]rial counsel's failure to call R.T., Twist's brother, M.B., R.T.'s girlfriend, and petitioner to the stand constituted reasonable trial strategy in that counsel were understandably concerned about the potential for damaging testimony on cross-examination."

█ Twist, on several occasions, told trial counsel he wanted to take the stand on his own behalf. Trial counsel strongly advised Twist not to take the stand on his own behalf based upon their reasoning that if Twist admitted having sex with one of his daughters during cross-examination that admission would have a negative effect on his credibility and the court would

have concluded that Twist had engaged in sexual acts with the other children as well. At the post-conviction review hearing, Twist testified that if he had taken the stand he would have admitted having sex with one of his daughters, but would have denied any sexual contact with the other children. On appeal, Twist argues that the post-conviction review court's determination was clearly erroneous. Twist argues that the trial court would have "likely" been impressed with his candor and accordingly trial counsels' tactical decision to keep Twist off the stand was manifestly unreasonable. While Twist's prediction of the trial court's reaction to his admission that he had sex with his minor daughter may be accurate, trial counsels' concern that such admission would be extremely damaging was well-founded. The post-conviction review court did not clearly err in finding that trial counsels' decision to keep Twist off the stand was not "manifestly unreasonable."

█ At the post-conviction review hearing, Twist introduced affidavits of R.T., Twist's brother, and M.B., R.T.'s girlfriend, suggesting that if they had been called to testify at the trial they would have testified as to a conspiracy among members of the Twist family against Twist and that two of the prosecution witnesses had reputations in the community for not telling the truth. On appeal, Twist argues the post-conviction review court clearly erred in not categorizing trial counsels' failure to call these witnesses manifestly unreasonable.

Trial counsel had made a determination that another family member would be the best witness as she was neither a victim nor a perpetrator of incest.

The decision of trial counsel not to put these witnesses on the stand or pursue the "conspiracy" theory in their defense of Twist clearly falls within the purview of trial tactics. Based on the rationale of trial counsel, the post-conviction review court properly concluded that trial counsels' decisions not to call these witnesses failed to reach the level of manifest unreasonableness. The post-conviction review court's

finding is supported by competent evidence in the record and accordingly, there is no error.

E. Failure to Pursue Twist's Request to Submit to a Lie Detector Test.

The post-conviction review court found that "[t]rial counsels' decision not to arrange for a lie detector test despite Twist's insistence reflected the prevailing view that such tests were not admissible in court; additionally, in counsels' professional judgment, the test results would not have discouraged the District Attorney's prosecution of the charges against defendant. This decision was not manifestly unreasonable."

On appeal, Twist argues that because (1) he requested to be allowed to submit to a lie detector test; (2) the developing trend in a number of states allows the results into evidence; and (3) trial counsel was aware that R. Field & P. Murray, *Maine Evidence*, § 4.03.6 at 99, suggests that lie detector tests would be admissible in certain circumstances, trial counsels' failure to pursue the lie detector test was manifestly unreasonable and the post-conviction review court's determination clearly erroneous.

We find Twist's contention to be without merit. As the post-conviction review court properly noted, the record supported a finding that trial counsels' decision was based on numerous factors, including the fact that lie detector results are inadmissible in Maine. The post-conviction review court properly concluded that trial counsels' decision with regard to the lie detector issue did not deny Twist effective assistance of counsel. We find no error.

The entry is:

Judgment affirmed.

All concurring.