1997 ME 177

**STATE of Maine**

v.

**Michael BREWER.**

**Michael BREWER**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Dec. 3, 1996.

Decided Aug. 5, 1997.

Geoffrey Rushlau, District Attorney (orally), Bath, for the State.

Richard W. Elliott, II (orally), Elliott & Elliott, Boothbay Harbor, for defendant-petitioner.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

DANA, Justice.

[¶ 1] Michael Brewer appeals from the judgments entered in the Superior Court (Sagadahoc County, *Brodrick, J.*) on jury verdicts finding him guilty of attempted murder (Class A), 17–A M.R.S.A. §§ 152, 201; aggravated assault (Class B), 17–A M.R.S.A. § 208; and terrorizing (Class D), 17–A M.R.S.A. § 210. Brewer also appeals from the judgment entered in the Superior Court (Sagadahoc County, *Fritzsche, J.*) denying in part Brewer's petition for post-conviction relief. Brewer on direct appeal contends that his counsel should have been permitted to withdraw and that the court committed obvious error when it admitted a police officer's state of mind testimony on the terrorizing charge. Brewer in his post-conviction petition contends that he was denied a fair trial because his trial counsel was ineffective, because a witness gave false testimony at the trial, and because the State failed to disclose the notes from a police officer's interview with the victim. We affirm the judgments.

[¶ 2] On August 26, 1988, Michael Brewer and two friends, Lana Benoit and Lisa Plummer, were drinking at a bar in Boothbay Harbor. They had been involved in a theft a few months earlier, and Benoit had recently confessed to the crime and informed the authorities about Brewer's and Plummer's involvement. According to Benoit, they left the bar and Plummer and Brewer attacked Benoit while they were walking over a footbridge to Plummer's apartment. While Plummer held Benoit down, Brewer kicked and punched Benoit's face. When Officer Daren Graves arrived on the scene, Benoit was lying on the bridge with Brewer leaning over her.

[¶ 3] After the police spoke with Benoit at the hospital, Officer Graves returned to the footbridge area and arrested Brewer and Plummer. According to Graves's testimony, Brewer made threatening statements to Graves while they were in the police cruiser.

[¶ 4] Brewer testified that he did not participate in assaulting Benoit. He asserted that Plummer kicked and punched Benoit while he watched. After Plummer stopped beating Benoit, Brewer tried to help Benoit and was kneeling over her when the police arrived. Brewer testified that he never threatened Graves in the cruiser.

[¶ 5] Brewer was indicted by a grand jury for attempted murder, aggravated assault,

terrorizing, and tampering with a witness (Class C), 17–A M.R.S.A. § 454. Brewer moved to sever the four charges and sought separate jury trials for each count on the ground that they involved different victims and incidents not arising out of a continuous course of conduct. The court never ruled on the motion. Brewer also moved the court to give him funds to hire a private investigator. The court awarded $500 for the investigator's fees, but an investigator was not hired.[1]

[¶ 6] The day before jury selection, Brewer's attorney, Dennis Hagemann, moved to withdraw because Plummer had told him months earlier during her bail hearing that Brewer was present during the assault on Benoit, but that he had not participated. Plummer claimed responsibility for the attack. Hagemann was reminded of Plummer's statements when he was reviewing his notes in preparation for trial. He explained to the court that he was concerned he had gained information from her in a private conversation and if she were to testify at the trial he might violate her attorney-client privilege, or that it would be necessary for him to testify in Brewer's trial about Plummer's statements. The State informed the court that Plummer was going to waive any privilege and testify in Brewer's case. The court denied Hagemann's motion to withdraw.

[¶ 7] The jury found Brewer guilty on all counts of the indictment except the charge of tampering with a witness. Hagemann moved to withdraw at the conclusion of the trial on the ground that Brewer threatened him with physical harm. The court granted the motion and assigned another attorney, Schuyler Steele, to represent Brewer at the sentencing proceedings. On September 11, 1989, Brewer was sentenced to 20 years for attempted murder, 10 years for aggravated assault, and 364 days for terrorizing. On July 16, 1990, Brewer filed a notice of appeal of the judgment which we dismissed for untimeliness.

[¶ 8] On May 21, 1993, Brewer filed a petition for post-conviction review. He alleged that the performances of his trial counsel and sentencing counsel were ineffective.

Brewer also asserted that he was denied a fair trial because the State failed to provide him with exculpatory evidence in the form of notes taken by a police officer during a conversation with the victim shortly after the assault. Finally, Brewer argued that he had been denied a fair trial because Officer Daren Graves had given false testimony. Graves was charged with rape sometime in 1991 and is no longer a police officer. Brewer introduced testimony of four inmates who allegedly heard Graves state that he "did what he had to do" to convict Brewer.

[¶ 9] After a hearing on Brewer's petition the court concluded that Hagemann's performance did not amount to ineffective assistance of counsel. The court found, however, that Steele's failure to perfect a timely direct appeal to the Law Court resulted in ineffective assistance and reinstated Brewer's right to directly appeal his convictions. The court stated that it was not convinced "there was any prosecutorial misconduct or attorney inattention surrounding the 'missing exculpatory police report.'" Finally, the court was "not sufficiently convinced of the veracity" of the accusations that Graves lied in Brewer's trial and refused to grant Brewer a new trial on that ground. Brewer filed an appeal of the post-conviction judgment which was consolidated with his direct appeal.

## I. Appeal of Convictions

[¶ 10] Brewer contends that the trial court erred when it refused to allow trial counsel to withdraw once counsel informed the court that he had a private conversation with Plummer in which she took responsibility for the attack. Brewer argues that his attorney might have been needed as a witness and could have testified about Plummer's statements.

[¶ 11] "The denial of a motion for withdrawal or substitution of counsel is generally discretionary with the court." *State v. Goodine*, 587 A.2d 228, 229 (Me.1991). Here, counsel raised the possibility of a conflict of interest one day before the jury selection began and the court was appropriately con-

---

1. Brewer's attorney testified that he hired a friend to locate one witness who was outside the   state.

cerned about delaying the proceedings. Furthermore, the State informed the court that Plummer was likely to waive any privilege that existed between her and trial counsel, and there were several other witnesses prepared to testify about Plummer's statements in which she claimed responsibility for the attack. Thus, it appeared unlikely that trial counsel would be faced with violating any duty he owed to Plummer or that he would be forced to testify as a witness regarding Plummer's statements. The court weighed the low risk of counsel being called to testify for Brewer against the considerable delay that would result from withdrawal. Finally, no conflict ever arose during the trial because Plummer was never called as a witness and two other witnesses testified about her statements. The court did not abuse its discretion by refusing to allow trial counsel to withdraw.

[¶ 12] Brewer next contends the court erred when it admitted testimony of Officer Graves's state of mind after Brewer threatened him in the cruiser because the testimony was so prejudicial that it foreclosed Brewer's ability to obtain a fair trial on the other charges. Graves testified that he took Brewer's threats seriously because Graves "thought that he would probably carry it out, one way or another." Graves stated: "I had the kids stay—when he got bailed out, I had the kids stay at another house for a couple of nights. I made sure my arsenal was in order." Brewer did not object to Graves's testimony.

[¶ 13] When evidence is admitted without objection, we review the admission for obvious error affecting the defendant's substantial rights. *State v. Sostre,* 625 A.2d 910, 912 (Me.1993). "Obvious error exists only when the error complained of is so highly prejudicial and so taints the proceedings as to virtually deprive the defendant of a fair trial." *State v. Magoon,* 649 A.2d 1115, 1117 (Me.1994) (citation omitted). There is nothing in the record to show that Graves's testimony was so highly prejudicial that it denied Brewer a fair trial on any of the charges.

## II. The Post–Conviction Judgment

[¶ 14] Brewer first contends that the court applied an improper standard for determining whether his trial counsel's performance was ineffective. The court stated:

> The question is not whether [counsel's] performance was exemplary, average, or even whether it fell below that which might be expected of an ordinary, fallible attorney. The question is whether it fell measurably below.... While trial counsel's performance was below average it was not so weak as to sink to the level of ineffective assistance of counsel.

Brewer asserts that this standard is inconsistent with the test set forth in *Lang v. Murch,* 438 A.2d 914, 915 (Me.1981), and *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We agree.

[¶ 15] In *Lang* we established the modern standard for determining whether trial counsel's performance is ineffective for purposes of the Sixth Amendment to the United States Constitution and Article I, section 6 of the Maine Constitution. The determination requires a two-part inquiry:

> (1) Has there been serious incompetency, inefficiency or inattention of counsel-performance by counsel which falls measurably below that which might be expected from an ordinary fallible attorney? (2) Has such ineffective representation by counsel likely deprived the defendant of an otherwise available substantial ground of defense?

*Lang,* 438 A.2d at 915 (citing *Commonwealth v. Saferian,* 366 Mass. 89, 315 N.E.2d 878, 883 (1974)). Pursuant to this standard, the defendant bears the burden of establishing "not only that trial counsel's performance was deficient but also that the deficiency likely affected the outcome of the trial." *State v. Jurek,* 594 A.2d 553, 555 (Me.1991) (citation omitted). Three years after we decided *Lang,* the United States Supreme Court provided a framework for analyzing ineffective assistance of counsel claims in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must first establish

that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064. We concluded in *Kimball v. State*, 490 A.2d 653, 656 (Me. 1985), that the test announced in *Strickland* is "virtually identical" to the test we established in *Lang*. *Cf. Scarpa v. Dubois*, 38 F.3d 1, 7 n. 4 (1st Cir.1994), *cert. denied*, 513 U.S. 1129, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995) (Massachusetts standard for determining ineffective assistance of counsel, from which Maine test arose, is "functionally identical" to *Strickland* test).

■ [¶ 16] The court erred when it stated that a defendant must demonstrate that counsel's performance fell lower than that which is below an ordinary fallible attorney. The requirement in *Lang* that the defendant must demonstrate counsel's performance to be "measurably below" that of an ordinary fallible attorney does not require the defendant to establish the performance was some quantum of ineffectiveness below that of an ordinary attorney; rather, the test requires that the defendant reveal conduct falling just below the performance of an ordinary fallible attorney. *See Levesque v. State*, 664 A.2d 849, 851 (Me.1995) (standard is one of "reasonably competent assistance").

■ [¶ 17] When in *Lang* we used the phrase "performance ... measurably below that which might be expected from an ordinary fallible attorney," *Lang* at 915, we were using a qualifier, i.e., "measurably," with no value. In other words, performance below that of any ordinary fallible attorney is (by definition) performance measurably below that of any ordinary fallible attorney. If you know that a performance is below that of a standard, then you have measured the performance and found it wanting. Because the word "measurably" cannot be defined (what measure would we use?) and only encourages advocates and judges to employ their own alternate, we delete the word from the test of

whether trial counsel's performance is constitutionally sufficient.

■ [¶ 18] The court found that trial counsel's performance was below average but, because the court applied a lower standard for measuring ineffectiveness, concluded that it did not fall to the level of ineffective assistance. We agree with the court's assessment that trial counsel's conduct was below that of an ordinary fallible attorney and, applying the correct standard for measuring counsel's performance, conclude that Brewer satisfied the first prong of the ineffectiveness test.

■ [¶ 19] We must uphold the court's findings regarding the quality of trial counsel's performance unless they are clearly erroneous and unsupported by any evidence in the record. *Twist v. State*, 617 A.2d 548, 550 (Me.1992) (citation omitted). The record reflects numerous failures by trial counsel that support the court's finding that counsel's performance was below that of an ordinary fallible attorney: counsel failed to hire a private investigator even though the court awarded him funds for such purposes; he failed to interview or prepare witnesses prior to the day of the trial; and he made factual errors in his opening and closing statements to the jury which were discredited by the State.

■ [¶ 20] Although Brewer correctly asserts that his attorney's performance was below that of an ordinary fallible attorney, he must also establish that his attorney's substandard performance denied him a fair trial. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 691–92, 104 S.Ct. at 2067. Thus, a claim of ineffective assistance of counsel requires the defendant to establish that his attorney's performance deprived him of a substantial ground of defense, *Lang*, 438 A.2d at 915, or that counsel's performance likely affected the outcome of the trial, *Whitmore v. State*, 670 A.2d 394, 396 (Me.1996) (citation omitted). Failure to prove prejudice resulting from an attorney's performance precludes relief regardless of the quality of that performance. *Jurek*, 594 A.2d at 555. Contrary to Brewer's assertions, we

find that no prejudice resulted from his attorney's performance.

### Pretrial Investigation

[¶ 21] Brewer argues that a proper pretrial investigation would have produced more witnesses willing to testify that Plummer stated she was responsible for the attack, and that trial counsel could have used the witnesses to corroborate the testimony of other witnesses at the trial. Although further investigation may have uncovered these potential witnesses, all of whom are friends of Brewer, the lack of their testimony at the trial did not deprive Brewer of a substantial ground of defense. Two of Brewer's friends, David Townshend and Lee Abbott, testified that Plummer told them she had almost killed Benoit and that Brewer was not involved in the attack. Brewer does not contend that his other friends would have added anything new to that testimony. Furthermore, the court heard the testimony of Brewer's friends who could have testified at the trial and found the witnesses were not credible. Because counsel introduced testimony about Plummer's statements from two of Brewer's friends, trial counsel's inadequate investigation and failure to uncover the testimony of Brewer's other friends did not likely affect the outcome of the trial. *See Twist*, 617 A.2d at 550 (counsel's failure to offer testimony of witness who would testify about victim's prior inconsistent statements did not prejudice defendant when there was other evidence admitted to impeach victim's testimony).

[¶ 22] Brewer asserts that he was prejudiced by trial counsel's substandard investigation because counsel failed to discover an ambulance "run sheet" that could have been used to impeach the testimony of Benoit's doctor who testified about her condition when she arrived at the hospital. The run sheet showed that Benoit was conscious during some part of the trip to the hospital and included a brief description of her injuries. The run sheet did not contain information that was helpful to Brewer's theory of defense and, furthermore, admitting additional evidence regarding Benoit's injuries could have been detrimental to Brewer's case. Brewer cannot establish that counsel's failure to obtain the ambulance run sheet had any prejudicial effect on the outcome of the trial.

[¶ 23] Brewer also argues that a better investigation would have uncovered Vicki Holbrook, Officer Graves's ex-wife and an acquaintance of Brewer, who would have testified that Graves and Brewer had a history of animosity arising from prior altercations and that Graves said he would "get [Brewer] one way or another." Even if further investigation would have exposed Holbrook's information and she had been willing to testify at Brewer's trial, the post-conviction court concluded that her testimony "had substantial weaknesses in it." Trial counsel's failure to obtain weak impeachment testimony "does not satisfy the second part of the *Lang* test, that counsel's ineffectiveness must have deprived the defendant of a substantial ground of defense[,]" *Kimball*, 490 A.2d at 657, and does not undermine confidence in the trial's outcome.

### Pretrial Motion to Sever

[¶ 24] Brewer contends that trial counsel filed a motion to sever the charges against Brewer but never pressed the motion and as a result, the jury heard prejudicial testimony from Officer Graves that was not relevant to counts other than the terrorizing charge. Counsel testified that he made the motion as a "last-ditch, last minute attempt to sever," but that "he didn't think severance would apply, to be honest[,]" and he made the decision not to press the motion because he expected that "it wouldn't fly." The court must accord "trial counsel great deference in their tactical decisions and these decisions are reviewable solely for 'manifest unreasonableness.' Manifest unreasonableness only occurs when counsel's performance deprives the defendant of a substantial ground of defense." *Twist*, 617 A.2d at 549 (citation omitted). Counsel's failure to press the motion was not manifestly unreasonable. The four charges against Brewer arose from conduct that occurred close in time and as part of a continuous chain of events. The likely success of the motion to sever, if pursued, was questionable. Moreover, failure to press the motion did not deprive Brewer of a substantial ground of defense.

### Failure to Ensure that Plummer Testified

[¶ 25] Brewer argues that his attorney failed to ensure that Plummer testified

at the trial and that Plummer would have claimed responsibility for the attack. Trial counsel testified, however, that he considered Plummer to be a "wild card" witness who presented an "extreme risk" on the stand. Plummer had "flip-flopped" in her statements to the authorities, sometimes taking the blame for the attack and sometimes asserting that Brewer was responsible. When Plummer failed to appear at the trial, he decided not to seek a continuance because he had other witnesses to testify about her statements that Brewer did not participate in the attack and he could "point the finger of blame on an empty seat." The post-conviction court concluded that this decision was a reasonable one. We agree. The evaluation of potential witnesses and " 'whether their appearance can be expected to benefit or injure his client's case' " is a matter left to the professional judgment of the attorney. *Levesque,* 664 A.2d at 852 (quoting *Pierce v. State,* 463 A.2d 756, 760 (Me.1983)). In light of the risk that Plummer posed to the defense and because counsel called other witnesses to testify about Plummer's statements, his decision not to seek a continuance was not manifestly unreasonable and Brewer was not deprived of a substantial ground of defense.

### Errors in Counsel's Opening and Closing Statements

[¶ 26] Brewer contends that trial counsel made incorrect factual assertions or omissions in his opening and closing statements to the jury and that the State discredited counsel's arguments by pointing out the errors to the jury. Trial counsel's errors in his opening statement involved an incorrect identification of Benoit's boyfriend and an inaccurate statement of the reason that Brewer, Plummer, and Benoit were on the footbridge when the attack occurred. In his closing argument counsel failed to mention that Brewer saw Plummer use her shirt to choke Benoit. Brewer has failed to show how the statements and the omission prejudiced his case.

### Mental and Physical Health Problems

[¶ 27] Brewer argues that his attorney suffered from mental and physical health

problems that tainted his performance to such a degree that his performance was ineffective. The court found that trial counsel was "under considerable stress" and "received medical and psychological care for stress related chest pains," but that his mental and physical condition did not cause his assistance to be ineffective. We agree. The only evidence in the record regarding trial counsel's health in relation to Brewer's case is his failure to attend Brewer's arraignment due to illness. The court provided Brewer with another attorney and Brewer does not make any assertion that trial counsel's absence affected the proceeding or any other aspect of his case.[2]

### Officer Graves's Testimony

[¶ 28] Brewer next contends that the court erred in concluding that Officer Daren Graves did not perjure himself at Brewer's trial. He argues that Graves lied to the jury about statements Brewer made after the attack on Benoit and about threats Brewer leveled at Graves in the police cruiser.

[¶ 29] The court determined that the witnesses who testified about Graves's alleged perjury were not credible. We give particular deference to the court's assessment of witnesses before it. *Lewisohn v. State,* 433 A.2d 351, 355 (Me.1981). The court had "a unique opportunity to observe the demeanor of the witnesses on the stand and to take account of those important subtleties unaccessible to this court in reviewing a cold transcript." *Id.* The court's finding that Graves did not perjure himself at Brewer's trial is not clearly erroneous.

### Officer Benner's Notes

[¶ 30] Brewer asserts that the State failed to disclose Officer Benner's notes that he recorded during an interview with the victim shortly after the assault and that the State's nondisclosure denied him a fair trial. The court "was not convinced that there was any prosecutorial misconduct or attorney inattention surrounding the missing exculpatory police report." Although the court erred by looking to prosecutorial misconduct to

---

2. Brewer's remaining contentions regarding his     attorney's performance do not merit discussion.

determine whether Brewer received a fair trial, we find that the State's nondisclosure of Benner's notes did not deprive him of his due process rights.

[¶ 31] In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the United States Supreme Court established that suppression of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To determine whether Brewer obtained a fair trial, the court must look to whether Benner's notes were favorable to Brewer and material to his guilt or punishment.

[¶ 32] "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *State v. Harnish,* 560 A.2d 5, 7 (Me.1989). Although Benner's notes were favorable to Brewer, they were not material to his guilt because they do not undermine confidence in the outcome of the trial. The notes state: "Mike didn't seem like he wanted to kill me," but go on to say "Mike pounded me in the head.... Mike was holding me while Lisa kicked me.... Mike and Lisa were holding the cloth around my neck...."[3] Benoit's testimony at Brewer's trial was consistent with her statements in Benner's notes. She testified that Plummer initiated the assault, that the attack "really wasn't very severe" at the beginning, but that as it continued Brewer and Plummer were "just constantly kicking and punching." Benner's notes do not create a reasonable probability that, had they been given to Brewer prior to trial, the result of the trial would have been different.

The entry is:

Judgments affirmed.

WATHEN, Chief Justice, with whom CLIFFORD, J. joins, concurring.

[¶ 33] I concur with the result in this case but respectfully disagree with the Court's alteration of the legal standard employed in evaluating claims of ineffective assistance of counsel. I do not agree that the phrase "measurably below that which might be expected from an ordinary fallible attorney" is without content. Furthermore, even if the Court's analysis was correct, this particular case does not present a proper occasion for revision of the first prong of the constitutional analysis set out in *Lang v. Murch,* 438 A.2d 914 (Me.1981).

[¶ 34] In *Lang,* we adopted the standard employed in *Commonwealth v. Saferian,* 366 Mass. 89, 96, 315 N.E.2d 878, 883 (1974), to resolve ineffective assistance of counsel claims. This standard involves inquiry into both the allegedly deficient nature of the representation and the resulting prejudice. In determining whether there has been deficient performance, we ask whether there has "been serious incompetency, inefficiency or inattention of counsel—performance by counsel which falls measurably below that which might be expected from an ordinary fallible attorney...." *Vaughan v. State,* 634 A.2d 449, 449–450 (Me.1993) (quoting *Lang,* 438 A.2d at 915). Since *Lang,* this standard for evaluating allegedly deficient performance by counsel has been given content by this Court through case-by-case application. *See, e.g., Tribou v. State,* 552 A.2d 1262, 1264 (Me. 1989). The standard is still consistently applied by Massachusetts courts in deciding ineffective assistance claims. *See, e.g., Adop-*

---

**3.** Benner's handwritten notes read as follows:

Mike, Lisa, Derek. Middle of the footbridge. Kicked me in the back. Lisa had something around my neck and face. Both on top of me and hit me. Derek said he was going to kill me. Mike said he had some beer on the bridge. [Benoit] said argued w/Mike at Hawk's [bar]. I knew something was going to happen. Lisa had a cloth—1st on my face then on my neck, Mike didn't seem like he wanted

to kill me[,] know Mike told Lisa you're going to kill her. Lisa laughed and laughed. Mike pounded me in the head. Lisa kicked me in the face and neck. Mike was holding me while Lisa kicked me—people just walked by. Derek said he was going to kill me. Lisa had some sort of cloth. Started on the runway. I can't move my back. Mike and Lisa were holding the cloth around my neck because I was so strong just one of them couldn't do it.

*tion of Brooke,* 42 Mass.App.Ct. 680, 684–85, 679 N.E.2d 569, 572 (1997). Furthermore, the *Lang* test is not at odds with applicable federal law. It has been held that the *Lang* test is functionally identical to the test set out by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Kimball v. State,* 490 A.2d 653, 656 (Me.1985). *Cf. Scarpa v. Dubois,* 38 F.3d 1, 7 n.4 (1st Cir. 1994) (Massachusetts standard functionally identical to *Strickland* test).

[¶ 35] The "measurably below" language set forth in *Lang,* thus, has been given a rich, context-based, functional definition by common law, case-by-case development. By its careful elucidation of semantic nuance, the Court ignores the method of the common law [4] and invites confusion by purporting to alter the *Lang* standard in the absence of a fully developed factual context demanding alteration of the law. Because counsel's performance in the present case did not result in prejudice, we need not and should not address the question of whether counsel's representation was deficient, let alone change the standard for evaluating the question. *See Rickenbacker v. Warden,* 550 F.2d 62 (2d Cir.1976) (refraining from modification of the applicable ineffective assistance rule when doing so would not alter the result of the case). I endorse the instructions offered by the United States Supreme Court:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffctiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. I would affirm the judgment in this case simply on the lack of prejudice to the defendant.

---

**4.** "The life of the law has not been logic: it has been experience." O.W. Holmes, THE COMMON LAW 1, 37 (1881).