STATE OF MAINE

KENNEBEC, ss.

RECEIVED AND FILED
KENNEBEC SUPERIOR COURT

2004 MAY 24  A 10: 19

NANCY DESK
CLERK OF CO

RALPH BRADDICK,

Petitioner

v.

STATE OF MAINE,

Respondent

SUPERIOR COURT
CRMINAL ACTION
DOCKET NO. CR-03-19
SKS  -KEN-5/24/2004

DECISION ON PETITION
FOR POST-CONVICTION
REVIEW

This matter comes before the court on the petition of Ralph Braddick for post-conviction review pursuant to 15 M.R.S.A. § 2121-2130. The procedural history of Mr. Braddick's convictions is well set out in the Post-Conviction Assignment Order dated January 27, 2003, and will be incorporated herein. Suffice it to say that Braddick seeks review of his convictions for Visual Sexual Aggression Against a Child and Unlawful Sexual Contact following a jury trial on November 30, 2000.[1] The petitioner alleges four grounds for post-conviction review, which resolved themselves to four different ways in which he believes his trial attorney provided him with ineffective assistance of counsel.

Testimony from a series of witnesses presented by the petitioner was taken at hearings on various dates. In reviewing the petition, the court has considered all of this extensive testimony, plus additional documentary evidence prepared by the petitioner's present attorneys. The court has also read the entire transcript of the trial in order to refresh its recollection of the evidence presented and the quality of representation.

---

[1] Although Braddick was convicted of two counts of Visual Sexual Aggression Against a Child and one count of Unlawful Sexual Contact, his petition is focused on counts II and III of the indictment which alleged crimes committed in Augusta. Braddick does not appear to focus on his conviction of count I, i.e., concerning an incident in Winslow.

## Standard of Review

As recently interpreted, the standard for review in a post-conviction case involving alleged ineffective assistance of counsel is the following. The petitioner must demonstrate first that the performance of the trial attorney was below that of an ordinary fallible attorney and second that the attorney's performance deprived him of a substantial ground of defense or likely affected the outcome of the trial. *State v. Brewer*, 1997 ME 177, ¶¶ 19-20, 699 A.2d 1139, 1144. The performance of Braddick's trial attorney and the consequences of the performance will be considered separately below for each of the four categories stated in the petitioner's grounds for review.

## I.     Witnesses.

For his first ground, Braddick argues that his trial attorney failed to adequately interview witnesses and failed to make a proper argument to allow into evidence deposition testimony. On the first point, trial counsel testified that he did speak to a number of the witnesses by phone including nine possible witnesses who ultimately were not called at trial. Counsel also indicated that defense costs were a concern of the petitioner and that counsel was attempting to be careful in their expenditure.

In addition, trial counsel did expend the time and effort of flying to London, England, to depose a potential witness who had been identified by petitioner as a very important witness to the alibi defense. At trial, the court sustained the State's objection to those portions of the deposition in which the potential witness – Mr. Vaughn – was asked to repeat statements allegedly made by the petitioner concerning when he and the victim's mother broke up. Trial counsel strenuously argued the point (Trial Transcript, hereinafter "T.T.", pp. 166-173), asserting that the hearsay statements of the defendant were not being offered for the truth of what he said. The petitioner now argues that trial counsel should have advanced some other theory of admissibility for

these statements, if only to preserve the issue for appeal. After reviewing the transcript and petitioner's argument, the court finds no other plausible basis for admissibility.

After reviewing all aspects of the grounds, the court finds that the trial attorney's performance did not fall below that of an ordinary fallible attorney in the same circumstances.

## II.    Alibi Defense.

At trial, the petitioner advanced two basic defenses: (1) a straight denial of the alleged actions, and (2) an alibi or partial alibi defense. For purposes of this petition, Braddick does not suggest any defense that was overlooked by his trial attorney, but argues that the attorney failed to adequately develop the alibi defense, which affected the fairness of his trial.

The indictment alleged that the activities that were the subject of counts II and III occurred "between September 11, 1996, and June 1, 1998, on one or more occasions, in Augusta . . ." As will be discussed below, the trial attorney was concerned about narrowing the timeframe because of the possibility of establishing an alibi defense for the defendant. Although residing in Augusta at the time in question, the defendant was an airline pilot who spent much of his time out-of-state on business. The strategy this presented was to attempt to narrow any "window of opportunity" and then show how little time during that window would have been available for the defendant to have been alone with the victim, in an attempt to at least create a reasonable doubt that the events occurred.[2] Perhaps for purposes of impressing the jury with the strength of this defense, trial counsel stated that there was an "absolute alibi" for these events (T.T., p. 20), but despite this bold assertion, there were always times not accounted for.

---

[2] This was not a classic alibi defense of the type which shows that the defendant had no access to the victim because he was in an entirely different place during the time in question. Rather, the defense had to do with reasonableness or probability of access during the times in question.

In response to a motion for a bill of particulars, which was granted, the State sent a letter to trial counsel stating, "The discovery you have provided reveals that the allegations contained in counts 2 and 3 of the indictment occurred after your client moved to Augusta, and before Laurel and the children broke off relations with him; the outside dates for those events, and consequently the outside dates for the commission of those offenses, would be between January 1, 1997, and December 31, 1997." Later evidence narrowed that timeframe from sometime in early May to mid to late September, depending upon which version of the "break up" date is accepted. There were indications from the discovery (Det. Moinster's report – State's Exhibit's 6, pp. 2-3) that suggested the activity might have occurred while school was in session. According to the trial attorney's testimony, he was faced with a decision of how to limit the window or windows of opportunity for purposes of the alibi defense. Knowing that he could not close the window with regard to July and August of that year and with indications from the Moinster report that the activities had occurred during the school year but close to the victim's birthday in September, the attorney made the tactical decision to focus on September as the target for the alibi. Such a decision is within the performance of an ordinary fallible attorney.

The petitioner argues that his trial attorney was ineffective in developing the alibi defense by failing to adequately investigate and present alibi information for May and June as well as September of 1997. To illustrate the point, the petitioner has developed a colorful graphic calendar display of his whereabouts during the months of May, June and September using not only petitioner's flight logs and schedules, but also receipts and other information newly developed. Even so, the new argument would have faced the same problem as the trial argument in the face of the testimony of the witness. On direct examination, the victim testified with regard to counts II and III that

by May 8, 1997, she had moved from Winslow to Augusta with her mother and was back at Farrington School (T.T., p. 40). She also testified that there were times when she went to the defendant's apartment (T.T., pp. 44-45) after school and let herself in to do homework or watch television. When asked about the specific time for the incidents alleged on direct examination, the following took place:

> Q.   And at some point you say you were in the kitchen or living room. Is that where you stayed or did you go somewhere else?
>
> A.   I had a homework question. I knocked on Ralph's door where he was in his bedroom and he told me I could come in. I went in and I was a little shocked at what I had seen. And –
>
> Q.   You said you think you had a homework question?
>
> A.   Yes.
>
> Q.   Do you know whether that was schoolwork or an assignment he had given to you?
>
> A.   I don't know which one it was.
>
> Q.   Do you know – we know you were in school at Farrington by May. Do you know what month this was, whether it was May or June or July, August, September, do you know?
>
> A.   No.

On cross-examination, the victim was asked about the date of the incident and her previous testimony that the defendant had given her money after the events, as follows:

> Q.   You said it twice in your report that you were doing homework?
>
> A.   Yes.
>
> Q.   Does that refresh your recollection that this occurred while you were in school?
>
> A.   No. Because I could have been doing his homework or schoolwork.
>
> Q.   You testified that at the end of this event you were given some small change, right?

A.    Yes.

Q.    And that it was birthday money, right?

A.    I don't know if it was birthday money or early or late birthday money, but I believe it was dealing with birthday money.

Q.    Do you recall telling Det. Moinster that this was birthday money?

A.    Yes.

Q.    That therefore this occurred around your birthday?

A.    It may not have occurred around my birthday; it could have been earlier, sometime in August, July.

Q.    Could it have been as early as June or May?

A.    Exactly.

Q.    You received birthday money three months before your birthday?

A.    No. Not that I recall. But I remember getting birthday money that was early.

Q.    It's your testimony now that maybe this wasn't near your birthday at all, right?

A.    I can consider two, three months before my birthday close enough to my birthday.

Q.    You may not have been in school. This may have been homework that Mr. Braddick gave you?

A.    What are you asking me?

Q.    About the homework, you say in your report that may not have been schoolwork that could have been Mr. Braddick's homework?

A.    It could have been. It could have been homework he gave me or school homework. I'm not sure.

Q.    How is your recollection of that second event today? Pretty good?

A.    I don't remember conversations. I remember what happened.

In other words, if the jury believed the testimony of the victim, which obviously they did, the date of the event could have been any time between May and mid-September – too long a period to be susceptible to a credible alibi defense.

In summary on this issue, the petitioner has demonstrated with the benefit of the trial transcript and additional materials that arguably a better job could have been done in preparing and presenting an alibi defense. However, the defense which was presented at trial was plausible and vigorously argued, and trial counsel's performance did not fall below that of an ordinary fallible attorney. Furthermore, even if the performance had fallen below that standard, the victim's testimony broadening the time period within which the offense could have been committed made it virtually impossible to present a successful alibi defense and any failings by trial counsel would not have denied the petitioner of a defense or a fair trial.

## III.    Victim's Presence.

As his third ground, the petitioner asserts that his trial attorney was inadequate in failing to develop the implausibility of the victim being at the defendant's apartment in 1997. In large part this argument is that the attorney failed to investigate possible witnesses or information concerning how the victim would have gotten to the petitioner's apartment and facts concerning access to the apartment. In this regard, the petitioner suggests to the court that the United States Supreme Court has established a duty to investigate as set forth in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). However, *Wiggins* can be easily distinguished on its facts,[3] since in that case, the public defender had not investigated or presented any mitigating evidence to a jury at sentencing, which resulted in a death sentence being imposed. In

---

[3] According to SHEPHARD'S, *Wiggins* has been distinguished 34 times in the short time since its announcement.

the present case there was some investigation, including a walking tour by counsel of the route between the school and the apartment. It is also suggested that trial counsel should have employed a private investigator to more fully develop some of these issues. However, there was a private investigator employed by the first attorney in the case and trial counsel explained the defendant's wish to keep the allegations as private as possible as a reason for not seeking further employment.

IV.    Time Period.

As his last ground, the petitioner contends that his trial attorney was ineffectual in getting the prosecution to commit to a specific timeframe during which the crime allegedly was committed. In this regard, the trial attorney was successful in pursuing a motion for a bill of particulars. During the hearing on the motion, the District Attorney at one point suggests that the event may have occurred while school was in session. (Motion Hearing Transcript, p. 8). However, the subsequent letter confirming the bill of particulars information states, "The discovery you have been provided reveals that the allegations contained in counts 2 and 3 of the indictment occurring after your client moved to Augusta and before Laurel and the children broke off relations with him; the outside dates for those events, and consequently the outside dates for the commission of those offenses, would be between January 1, 1997 and December 31, 1997." According to his testimony, the trial attorney subsequently discussed the school issue further with the District Attorney, but did not get a formal statement of the State's position in writing. At that point in the process, it appeared likely that the event occurred while school was in session, but that may have been as the result of a misinterpretation of the developing evidence by Det. Moinster, as later shown in the trial testimony of the victim herself. The trial attorney got the prosecution to reduce the

time period for the crime significantly through his motion for a bill of particulars and his efforts were at least as effective as those of an ordinary fallible attorney.

At other times during the hearing and argument, the petitioner questioned why the trial attorney filed a notice of alibi with the District Attorney when such notice is not precisely required under the rules. To this the trial attorney responded that it was better practice, in his opinion, to file such notice and the court agrees. There were also concerns raised about lack of time spent in preparation of the defendant for his testimony. However, if there was such lack of preparation, it was not apparent during the petitioner's own trial testimony.

A leading federal case, cited with approval in Maine, is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). After announcing the standard of review, the Supreme Court noted,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. 466 U.S. at 689.

In summary, the petitioner may have demonstrated that his trial attorney could have done different things which might have improved his presentation to the jury. However, the fact that the performance could have been improved did not deprive the petitioner of any defense or a fair trial. Applying the standards as set forth in *Brewer*, while considering the caution stated in *Strickland,* the court finds that the petitioner has failed to prove that the performance of his trial attorney was less effective than that of

an ordinary fallible attorney or, if it was, that such failing denied the petitioner a substantial defense or affected the outcome resulting in an unfair trial.

The order will be:

Petition DENIED.

Dated:  May __20__, 2004

_____

S. Kirk Studstrup
Justice, Superior Court

RALPH BRADDICK
  vs
STATE OF MAINE

## DOCKET RECORD

PL. DOB: 09/24/1962
PL. ATTY: DANIEL LILLEY                          State's Attorney: EVERT FOWLE
          DANIEL G LILLEY LAW OFFICE
          39 PORTLAND PIER
          PO BOX 4803
          PORTLAND ME 04112
          RETAINED 02/09/2004
PL. ATTY: MARY DAVIS
          TISDALE & DAVIS
          PO BOX 572
          PORTLAND ME 04112
          RETAINED 01/21/2003

Filing Document: PETITION                  Major Case Type: POST CONVICTION REVIEW
Filing Date: 01/21/2003

## Charge(s)

## Docket Events:

01/21/2003 FILING DOCUMENT -  PETITION FILED ON 01/21/2003

01/21/2003 Party(s):  RALPH BRADDICK
           ATTORNEY -  RETAINED ENTERED ON 01/21/2003

           Attorney:  MARY DAVIS
01/21/2003 POST CONVIC. REVIEW -  REVIEW SENT FOR REVIEW ON 01/21/2003

           COPY OF PETITION, DOCKET ENTRIES FOR UNDERLYING OFFENSE, J&C, INDICTMENT AND COVER LETTER
           SENT TO JUSTICE HUNTER AND COPIED TO D.A.
01/28/2003 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO DOCKET ON 01/27/2003
           E ALLEN HUNTER , JUSTICE
           PETITION IS ASSIGNED TO REG CR DOCKET; STATE RESPON WITHIN 20DAYS; WITHIN 60 DAYS PETITION
           SHALL FILE LIST OF WITNESSES.  POST-CONVICTION ASSIGNMENT ORDER FILED AND INCORPORATED
           HEREIN BY REFERENCE; CASE ASSIGNED TO THE REGULAR CRIMINAL DOCKET; TIME LIMITS
           ESTABLISHED.
02/11/2003 POST CONVIC. REVIEW -  RESPONSE TO PETITION FILED ON 02/10/2003

07/23/2003 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO JUSTICE ON 07/14/2003
           S KIRK STUDSTRUP , JUSTICE
           PER CHIEF JUSTICE MILLS
09/10/2003 POST CONVIC. REVIEW -  PCR CONFERENCE HELD ON 09/05/2003
           S KIRK STUDSTRUP , JUSTICE
           TELEPHONIC CONFERENCE WAS HELD.  1/2 DAY NEEDED FOR EVIDENTIARY HEARING-TO BE SCHEDULED IN
           DECEMBER EITHER 12/1 OR 12/4 IN P.M. ON THE 4TH.
09/10/2003 POST CONVIC. REVIEW -  ORDER RESULTING FROM PCR CONF FILED ON 09/08/2003

           COPIES TO COUNSEL
09/10/2003 HEARING -  EVIDENTIARY HEARING SCHEDULED FOR 12/04/2003 @ 1:00

NOTICE TO PARTIES/COUNSEL
09/10/2003 HEARING - EVIDENTIARY HEARING NOTICE SENT ON 09/10/2003


11/04/2003 OTHER FILING - WITNESS LIST FILED BY DEFENDANT ON 11/04/2003


12/11/2003 ORDER - TRANSCRIPT ORDER FILED ON 12/11/2003


COPY GIVEN TO PHIL GALUCKI.
12/11/2003 HEARING - EVIDENTIARY HEARING HELD ON 12/04/2003
S KIRK STUDSTRUP , JUSTICE
Attorney: MARY DAVIS
DA: PAUL RUCHA          Reporter: PHILIP GALUCKI
Defendant Present in Court


WITNESSES SEQUESTERED, PETITIONER'S WITNESSES DAVID CHRYSLER, NANCE MONAHAN AND KRISTA
BRADDICK; HEARING NOT CONCLUDED TO BE CONTINUED TO A LATER DATEFOR 1/2 A DAY.
12/11/2003 HEARING - EVIDENTIARY HEARING CONTINUED ON 12/04/2003


HEARING NOT FINISHED NEED TO SCHEDULE FOR ANOTHER 1/2 DAY
12/11/2003 HEARING - EVIDENTIARY HEARING SCHEDULED FOR 02/19/2004 @ 8:30


NOTICE TO PARTIES/COUNSEL
02/09/2004 Party(s): RALPH BRADDICK
ATTORNEY - RETAINED ENTERED ON 02/09/2004


Attorney: DANIEL LILLEY
02/09/2004 Party(s): RALPH BRADDICK
ATTORNEY - WITHDRAWN ORDERED ON 02/09/2004


Attorney: MARY DAVIS
02/09/2004 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 02/09/2004


NO OBJECTION BY STATE.
02/18/2004 MOTION - MOTION TO CONTINUE GRANTED ON 02/17/2004
S KIRK STUDSTRUP , JUSTICE
COPY TO PARTIES/COUNSEL
02/18/2004 Party(s): RALPH BRADDICK
ATTORNEY - RETAINED ENTERED ON 01/21/2003


Attorney: MARY DAVIS
03/17/2004 HEARING - EVIDENTIARY HEARING SCHEDULED FOR 04/21/2004 @ 9:00
S KIRK STUDSTRUP , JUSTICE
NOTICE TO PARTIES/COUNSEL
03/17/2004 HEARING - EVIDENTIARY HEARING CONTINUED ON 02/19/2004


03/18/2004 OTHER FILING - TRANSCRIPT FILED ON 03/18/2004


TRANSCRIPT OF MOTION HEARING HELD ON DECEMBER 4, 2003
04/23/2004 HEARING - EVIDENTIARY HEARING HELD ON 04/21/2004
S KIRK STUDSTRUP , JUSTICE
Attorney: MARY DAVIS
DA: PAUL RUCHA          Reporter: TIMOTHY THOMPSON
Defendant Present in Court

2ND PART OF HEARING ON POST CONVICTION PETITIONER'S WITNESSES: RALPH BRADDICK AND DAVID VAN DYKE

04/29/2004 HEARING - EVIDENTIARY HEARING HELD ON 04/28/2004
        S KIRK STUDSTRUP , JUSTICE
        Attorney: MARY DAVIS
        DA: PAUL-RUCHA        Reporter: JANETTE COOK
        Defendant Present in Court


        3RD DAY OF HEARING CO-COUNSEL DAN LILLY; PETITIONER'S WITNESS: DAVID VAN DYKE

04/29/2004 POST CONVIC. REVIEW - PCR DETERMINATION UNDER ADVISEMENT ON 04/28/2004
        S KIRK STUDSTRUP , JUSTICE
05/03/2004 MOTION - MOTION TO RECUSE MADE ORALLY BY DEF ON 04/28/2004

        ORAL MOTION MADE BY DEFENSE IN CHAMBERS
05/03/2004 MOTION - MOTION TO RECUSE DENIED ON 04/28/2004
        S KIRK STUDSTRUP , JUSTICE
        COPY TO PARTIES/COUNSEL
05/24/2004 FINDING - DENIED ENTERED BY COURT ON 05/24/2004


## Exhibits

12/04/2003 PETITIONER#1, Exhibit#1, CALENDER FOR SEPTEMBER, Marked on 12/04/2003.

12/04/2003 PETITIONER#1, Exhibit#2, CALENDER FOR MAY, Marked on 12/04/2003.

12/04/2003 PETITIONER#1, Exhibit#3, CALENDER FOR JUNE, Marked on 12/04/2003.

12/04/2003 PETITIONER#1, Exhibit#4, REPORT OF RAY MOINESTER WITH PAGES OF TRANSCRIPT, Marked on 12/04/2003.

12/04/2003 PETITIONER#1, Exhibit#6, PICTURE OF RALPH BRADDICK'S APARTMENT BUILDING, Adm over obj on 12/04/2003.

12/04/2003 PETITIONER#1, Exhibit#7, COPY OF RALPH'S SEPTEMBER WORK SCHEDULE, Adm w/o obj on 12/04/2003.

12/04/2003 STATE#1, Exhibit#1, LETTER FROM MR VAN DYKE TO THE PETITIONER REGARDING THE TRIP TO EUROPE, Adm w/o obj on 12/04/2003.

04/21/2004 PETITIONER, Exhibit#8, LETTER DATED 11/21/99 FROM DAVID VAN DYKE TO PETITIONER, Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#9, LETTER FROM DAVID VAN DYKE WITH ATTACHED COPY OF THE MOTION FOR BILL OF PARTICULARS, Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#10, RECEIPT FOR 1ST MONTHS RENT AND SECURITY DEPOSIT, Marked on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#11, COPY OF DELTA TIME TABLE, Marked on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#12, MEAL RECEIPT FROM OHIO DATED 5/5/04, Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#13, RECEIPTS WHILE IN KENTUCKY, Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#14, RECEIPTS FOR MEAL PURCHASES IN CINNCINATI, Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#15, COPY OF STIPULATION BETWEEN PARTIES, Marked on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#16, DELTA AIRLINE TIME TABLE, Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#17, RECEIPT FOR GAS FROM KENTUCKY, Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#18, PORTION OF DISCOVERY (POLICE REPORT OF RAY MOINESTER), Adm w/o obj on 04/21/2004.

04/21/2004 PETITIONER, Exhibit#19, BILL FROM DAVID VAN DYKE FOR LEGAL SERVICES, Adm w/o obj on 04/21/2004.

04/21/2004 STATE, Exhibit#2, LETTER DATED 12/99 FROM DAVID VAN DYKE TO PETITIONER, Adm w/o

obj on 04/21/2004.

04/21/2004    STATE, Exhibit#3, PETITIONER'S NOTES DATED 6/21/99, Adm w/o obj on 04/21/2004.

04/21/2004    STATE, Exhibit#4, LETTER TO DAVID VAN DYKE FROM PETITIONER, Adm w/o obj on 04/21/2004.

04/21/2004    STATE, Exhibit#5, MAY 1997 CALENDAR MADE BY PETITIONER, Adm over obj on 04/21/2004.

04/28/2004    PETITIONER, Exhibit#1A, DELTA AIRLINES TIMETABLE FOR 9/8/97, Marked on 04/28/2004.

04/28/2004    PETITIONER, Exhibit#2A, DELTA AIRLINES TIMETABLE FOR 6/1/97, Marked on 04/28/2004.

04/28/2004    PETITIONER, Exhibit#3A, DELTA AIRLINES TIMETABLE FOR 4/6/97, Marked on 04/28/2004.

04/28/2004    PETITIONER, Exhibit#20, LETTER TO DAVID VAN DYKE FROM PETITIONER DATED 1/6/00, Marked on 04/28/2004.

04/28/2004    PETITIONER, Exhibit#21, PETITIONER'S JOB APPLICATION, Marked on 04/28/2004.

04/28/2004    PETITIONER, Exhibit#7A, E-MAIL TO DAVID VAN DYKE FROM PETITIONER, Marked on 04/28/2004.

04/28/2004    PETITIONER, Exhibit#7B, E-MAIL TO DAVID VAN DYKE FROM PETITIONER WITH ATTACHED SEPT. CALENDAR, Marked on 04/28/2004.

04/28/2004    PETITIONER, Exhibit#7C, E-MAIL TO DAVID VAN DYKE FROM PETITIONER, Marked on 04/28/2004.

04/28/2004    STATE, Exhibit#6, REPORT OF RAY MOINESTER, Adm w/o obj on 04/28/2004.

A TRUE COPY
ATTEST:      _____
                        Clerk