STATE OF MAINE
WALDO, SS.

SUPERIOR COURT
Docket No. CR-10-251

CARLOS CASTRO,
      Petitioner

)
)
)
)
)

v.

)
)
)
)

Decision and Judgment on
Petition for Post-Conviction Review

STATE OF MAINE

)
)
)

This matter came before the Court for hearing on February 24, 2011 on the Petition for post-conviction review. Petitioner appeared with his attorney, Hunter Tzovarras, Esq., and with an interpreter, Mr. Garcia. The State appeared through ADA Walker.

## Procedural History

The initial petition for post-conviction review was filed on September 10, 2010. On November 5, 2010, the Court (Anderson, J.) found that the jurisdictional prerequisites of 15 M.R.S.A. §2124 had been met. Mr. Tzovarras was appointed on November 16, 2010, and an amended petition for post-conviction review was filed on December 21, 2010. On February 16, 2011, after the State had failed to timely respond to the petition, the Petitioner moved for a default. The State filed an Answer to the Petition on February 11, 2011, and responded to the request for a default on February 17, 2011. Given the allegation in the Motion for Default that: "Mr. Castro's right to lawfully stay in the U.S. will be denied on March 2, 2011...", the Court held a pre-hearing conference with counsel on February 17, 2011. The Court denied the Petitioner's request for a default and set the matter for hearing on February 24, 2011.

## Facts

Mr. Castro was born in El Salvador. He has resided in the United States for the last ten years, and he is in the United States legally with "temporary protective status". The deportation process is to commence on March 2, 2011.

In 2009, Mr. Castro was charged, pursuant to 17-A M.R.S.A. §207-A(1)(A), with domestic violence assault, class D. He was arraigned on the charge on November 6, 2009 (Worth, J.). His lawyer at the arraignment, Thomas Sheehan, Esq., waived reading of rights, and Mr. Castro pled not guilty. An interpreter was present on November 6, 2009.

Mr. Castro was next before the Court on March 9, 2010. At that time, he was represented by Steve Peterson, Esq. There was discussion on the record between the

1

Court (Kennedy, D., J.), Attorney Peterson and Mr. Castro about Mr. Castro pleading guilty to the domestic violence assault charge based on a deferred disposition. No interpreter was present, and the language difficulty was explored. Also, a statement was made about potential immigration consequences if the deferred disposition failed. Thereafter, the Court continued the matter.

Mr. Castro next appeared in Court on March 23, 2010 with Attorney Peterson and an interpreter. Mr. Castro entered a guilty plea to the domestic assault charge, and the plea was accepted (Worth, J.). The terms of the deferred disposition were if the deferred disposition was successful, the guilty plea would be withdrawn and the case dismissed, but if the deferred disposition was not successful, the guilty plea would stand and the sentence would be open to the Court. During the colloquy with the Court, Mr. Peterson stated that Mr. Castro understands that if he violates the agreement, there could be serious immigration consequences, including possible deportation.

The deferred disposition was not successful. Mr. Castro was sentenced for the domestic violence assault on June 15, 2010 to 10 days in jail with credit for time served. Thus, the Court has jurisdiction over this post-conviction review proceeding. See 15 M.R.S.A. § 2124(1)(C) and *State v. Trott*, 2004 ME 15.

Mr. Castro testified that he did not understand that: 1) pleading guilty to the charge of domestic violence would make him eligible to be deported; 2) his guilty plea under the deferred disposition would constitute a "conviction" under federal law that would subject him to deportation; and 3) if the deferred disposition was not successful, there was a risk he would be deported. The Court accepts Mr. Castro's testimony that he did not understand that: 1) pleading guilty to the charge of domestic violence would make him eligible to be deported or 2) his guilty plea under the deferred disposition constituted a "conviction" under federal law that would subject him to deportation. However, the Court does not accept that he did not understand that if the deferred disposition was not successful, there was a risk he would be deported.

Mr. Castro further testified that had he understood that pleading guilty would make him eligible to be deported, he would not have pleaded guilty. The Court accepts this testimony.

During his representation of the petitioner, Mr. Peterson understood that Mr. Castro was not a U.S. citizen, and he knew that immigration consequences were of concern to Mr. Castro. Mr. Peterson met with Mr. Castro on at least one occasion with the interpreter present to review the deferred disposition agreement. The Court is satisfied that Mr. Peterson was very careful in ensuring that the Defendant understood the terms of the deferred disposition.

Before the Defendant pled guilty, Mr. Peterson told Mr. Castro that he did not know the immigration consequences and suggested that he consult with immigration counsel. However, prior to Mr. Castro actually entering his guilty plea, Mr. Peterson did not ask Mr. Castro if he had consulted with immigration counsel, and Mr. Peterson did not directly consult with immigration counsel.

2

Mr. Peterson told Mr. Castro that he would not be convicted under Maine law unless he violated the deferred disposition agreement and was sentenced. Mr. Peterson did not tell Mr. Castro that pleading guilty, regardless of the outcome of the deferred disposition, would constitute a "conviction" under federal law for purposes of deportation.

## Analysis

Petitioner Castro has moved to vacate his plea and conviction claiming that the conviction was obtained in violation of his Sixth Amendment right to effective assistance of counsel as his attorney did not appropriately advise him of the adverse immigration consequences of his plea.

A Petitioner claiming ineffective assistance of counsel must prove the following: 1) that counsel's representation fell below an objective standard of reasonableness, and 2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The test under Maine law has been articulated as requiring that the petitioner prove: 1) serious incompetency, inefficiency or inattention amounting to performance below what might be expected of a reasonably fallible attorney, and 2) that counsel's performance affected the outcome of the case. *Brewer v. State*, 1997 ME 177. The Law Court has noted that the federal and Maine tests are "virtually identical". *Kimball v. State*, 490 A. 2d 654, 656 (Me. 1985).

In *Hill v. Lockhart*, 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985), the Court applied the *Strickland* standard in a post-conviction review case after a petitioner had entered a guilty plea instead of after trial. However, the Court re-formulated the second prong of the *Strickland* test to require a showing that there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. At 59. See also *Laferriere v. State*, 1997 ME 169. See also *Heon v State*, 2007 ME 131.

The U.S. Supreme Court has held that defense attorneys have an obligation under the Sixth Amendment to provide advice to non-citizen defendants of the deportation consequences of pleading guilty to the charged offense. *Padilla v. Kentucky*, 559 U.S. --, 176 L. Ed. 2d 284, 130 S. Ct. 1473 (2010)[1]. The Court noted: "It is quintessentially the duty of counsel to provide her client with available advice about an issue like

---

[1]  Mr. Carlos entered his plea of guilty seven days before the *Padilla* case was decided. The State has not raised the question whether the holding in *Padilla* applies retroactively. While the Court in *Padilla* did not clearly state whether its holding applied retroactively, it appears that it intended its holding to apply retroactively at least as to some defendants as the Court indicated that: "it seems unlikely that our decision today will have a significant effect on those convictions already obtained as a result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on deportation consequences of a client's plea. We should, therefore presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." *Padilla* at 297, 298. Compare *Padilla* with *Aldus v. State*, 2000 ME 47.

Because a) the State has not raised the issue of retroactivity, and b) the plea in this case fell well within the 15 years the U.S. Supreme Court indicated that there had been a generally recognized obligation on defense counsel to advise criminal defendants of deportation consequences, the Court applies *Padilla* in this case.

3

deportation and the failure to do so 'clearly' satisfies the first prong of the *Strickland* analysis." The Supreme Court noted that after Congress changed the Immigration and Nationality Act in 1996 eliminating the Attorney General's authority to grant discretionary relief from deportation, that the stakes were "dramatically raised" because the removal of non-citizen convicted of a removable offense after 1996 was "practically inevitable". *Padilla* at 292.

When the immigration law is clear, an attorney has the duty to give correct advise. *Padilla* at 296. But, when the deportation consequences are unclear or uncertain, the attorney's duty is to advise the defendant that the pending criminal charges may carry a risk of adverse immigration consequences. *Id.*

The immigration consequences of Mr. Castro's plea to domestic violence assault is determinable by review of the federal statutes. The law clearly states as follows:

> Any alien in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens......Any alien who at any time after admission is convicted of a crime of domestic violence, ..... is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian Tribal government, or unit of local government.

8 U.S.C. §1227(a)(2)(E).

Moreover, federal law is clear that a finding of guilt constitutes a conviction for purposes of immigration law. The law provides:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by the Court....

8 U.S.C.§1101(a)(48)(A).

Under Maine law, to impose a deferred disposition, the Court must accept the plea of guilty and then order that the sentence be deferred. See 17-A M.R.S.A. § 1348-A(1). The Court Order on the Deferred Disposition in this case read in part: "Based upon the above, the defendant's plea of guilty is accepted and sentencing is deferred for 1 year.....". See March 23, 2010 Order. Thus, upon the Court's acceptance of Mr. Castro's guilty plea to domestic violence assault, even in the absence of sentencing, Mr. Castro was deportable.

4

Defense counsel was very careful in ensuring the Defendant understood the deferred disposition agreement. Defense counsel also told the Defendant that if he was convicted of domestic violence assault, it was likely he would be deported. He also told the Defendant that he would not be convicted under Maine law unless he failed to comply with the deferred disposition agreement. However, defense counsel did not tell the Defendant that his entry of a plea of guilty to domestic violence assault would constitute a "conviction" for purposes of deportation and that he would be deported. In fact, the reasonable inference from counsel's advice was that the Petitioner would not be convicted if the deferred disposition was successful and he would not be deported if he was not convicted[2]. Therefore, in accord with *Strickland and Brewer*, the Court finds that Mr. Castro's attorney's representation fell below the objective standard of reasonableness and amounted to performance below what might be expected of a reasonably fallible attorney

The choices the Petitioner would have faced had he been told that he would be deported if he pled guilty to domestic violence assault were to enter a plea of guilty and be deported or proceed to trial. The Court is satisfied that had the Petitioner been told that his entry of a plea of guilty to the charge of domestic violence assault would result in his deportation, he would not have pleaded guilty and would have insisted on going to trial. Therefore, the Court finds that the Petitioner has satisfied the second prong of the *Strickland* test.[3].

The entry shall be:

For the foregoing reasons, the petition for post-conviction relief is granted. The plea of guilty and the judgment of conviction are vacated. The case shall be restored to the criminal trial list.

The Clerk shall enter this Order upon the docket by reference.

Dated: February 27, 2011

Ann M. Murray
Justice, Maine Superior Court

---

[2] Moreover, comments made by the Court on both 3/9/10 and 3/23/10 suggest that if there was a violation of the deferred disposition agreement, there could be serious immigration consequences.

[3] Had defense counsel known that the guilty plea itself, in the absence of a sentence, would constitute a "conviction" under federal law resulting in deportation, defense counsel's assessment and advice regarding the advisability of accepting the deferred disposition may well have been different. Moreover, the State suggested in its remarks (non-evidentiary) that it may also have been operating under the belief that the deferred disposition would not constitute a "conviction". Therefore, it is also possible that the plea negotiations would have had a different result.

5