STATE OF MAINE                          SUPERIOR COURT
HANCOCK, SS.                            Docket No. CR-03-100

                                        *J LH - ... ... .2/...*

Eugene Merchant,
      Petitioner


      v.                                Decision and Judgment

State of Maine,
      Respondent


APR 26 2005


      In March 2001, the petitioner, Eugene Merchant, was indicted for gross sexual assault, unlawful sexual conduct and two counts of kidnapping. Following a jury trial, Merchant was convicted of the first two charges and one count of kidnapping (resulting from a merger of the two separate kidnapping counts, on which the jury found the defendant guilty). These judgments of conviction were affirméd on appeal. *See State v. Merchant*, 2003 ME 44, 819 A.2d 2005. Merchant then filed a petition for post-conviction review, which was the subject of a hearing held on October 7, 8 and 25, 2004. On both hearing dates, Merchant was present with counsel.

      In his petition, Merchant alleges that he was deprived of effective assistance of counsel because his trial lawyer failed to conduct an adequate pretrial investigation; that counsel did not provide an adequate defense at trial and at the sentencing hearing; and that his attorney on appeal did not properly raise and argue issues of law. In order to establish a denial of the constitutional right to effective assistance of counsel, a post-conviction petitioner must prove (1) that there has been "serious incompetency, inefficiency or inattention of counsel-performance of counsel which falls. . .below that which might be expected from an ordinary fallible attorney", and (2) that the ineffective representation "likely deprived the defendant of an otherwise available substantial ground of defense[]." *State v. Brewer*, 699 A.2d 1139, 1143-44 (Me. 1997).

**A. Pretrial investigation**

      As part of his obligation to provide a constitutionally adequate caliber of representation, defense counsel owes a duty to conduct a reasonable investigation.

1

*Doucette v. State*, 463 A.2d 741, 745 (Me. 1983). "The amount of pretrial investigation necessary to comply with that duty cannot be measured precisely." *Pierce v. State*, 463 A.2d 756, 759 (Me. 1983). In what Merchant describes as the most significant issue he raises in this post-conviction proceeding, he contends that DeSanctis failed to conduct an adequate investigation of a separate incident allegedly involving the victim in this case. Merchant appears to argue that the victim made a false allegation that another person raped or otherwise sexually assaulted her in an episode unrelated to the one that led to Merchant's conviction. This claim falls flat, however, because Merchant has presented no evidence that the victim accused another person – whether truthfully or falsely – of such a sexual assault. At best for Merchant, the evidence indicates that the victim attended a party, that she was quite intoxicated, that she was aggressive toward some party-goers, and that police subsequently contacted several people who were present at the party about events that had occurred there. The record is devoid of competent evidence that she claimed that she was assaulted.[1]

Even if Merchant was able to establish that she made such a claim and that it was false, he has not demonstrated that such evidence would have been admissible at trial. Her conduct allegedly associated with the party is factually unrelated to the incident for which Merchant was tried. Presentation of evidence arising from the party would have required the parties to conduct a trial within a trial. Considerations flowing from M.R.Evid. 403, at the very least, make it highly unlikely that the court would have admitted such evidence.

### B. Trial proceedings

### 1. Improper juror contact

Merchant contends that during while the trial was ongoing, the prosecutor in the case, Michael Povich, had contact with members of the jury in the area between the courthouse and the adjacent building where the District Attorney's office is located. Merchant recognizes that, due to the state of the pleadings, he has raised this issue as one factual basis for his more general claim that DeSanctis did not provide him with effective

---

[1] It bears note that, prior to trial, DeSanctis and Merchant's private investigator were informed of rumors that the victim may have made other claims of rape. DeSanctis and the investigator looked into this matter and found nothing that would lead to or amount to admissible evidence.

2

representation. In other words, as he has framed the issue, Merchant must establish at a minimum that DeSanctis was advised of improper contact between Povich and jurors and then, despite having that knowledge, failed to raise the issue with the court.

At the post-conviction hearing, Merchant presented the testimony of five people who claim that they observed intra-trial contact between Povich and several jurors. Of these witnesses, only one, Merchant's sister, testified that she told DeSanctis of the alleged impropriety. (Another, Merchant's mother, testified that she may have advised DeSanctis of the issue well after the trial but that she was not even sure she had done so.) The totality of the evidence does not support the necessary element of this claim that DeSanctis became aware of these allegations. Merchant's sister's testimony suggests that she claims to have seen the improper contact on or about the first day of the trial, which itself extended into six days, and that on next day (that is, the second day of trial) she told DeSanctis what she had seen. DeSanctis denied that he ever received such information, and the development of the trial process gives credence to that denial. The fourth day of trial because devoted to a nearly daylong exercise of interviewing the trial jurors individually because of information that one or more of Merchant's family members themselves had had improper contact with one or more jurors. This, of course, presented an ideal context in which, with no additional interruption of the trial, jurors could have been asked whether they had had any extrajudicial contact with Povich. The court concludes that if DeSanctis had known of the allegations that Merchant makes here, he would have brought it to the court's attention so that the voir dire inquiry could have been expanded to include this issue. That he did not do so is strong evidence that no one told him of the allegations and that he did not know of the issue.

Similarly, following the trial, DeSanctis filed a motion for new trial based on a familial relationship between Merchant and one of the jurors. If DeSanctis had been advised that Povich had contact with jurors while the trial was ongoing, one would expect that DeSanctis would have raised the issue – which, if true, would have more merit than the one he actually pursued – in the post-trial motion.

Merchant has therefore failed to prove that DeSanctis knew or should have known of allegations of improper contact between Povich and some of the trial jurors. DeSanctis therefore did not deprive Merchant of proper representation by failing to raise

such an unknown issue. The court need not and does not address the merits of Merchant's claim that Povich had contact with jurors during the course of the trial.

### 2. Jennie Ames testimony

DeSanctis called one Jennie Ames to testify at trial. She testified that she had a conversation with the victim after the incident with Merchant and that the victim told her that Merchant had raped her and threw her clothes into a tree. In fact, when the victim first had contact with anyone following the assault, she was fully clothed. *See* October 15, 2001, transcript at pp. 135, 142.

Merchant contends here that DeSanctis should not have called Ames to testify because she told the jury that the victim accused Merchant of raping her. In fact, DeSanctis knew of this element of Ames' prospective testimony. Nonetheless, he concluded that the victim's account of her clothes was a clear "substantial embellishment" of Merchant's conduct. DeSanctis believed that, on balance, the benefits of Ames' testimony outweighed the prejudice. Defense counsel are permitted and expected to make precisely this type of assessment, and these tactical decisions are entitled to "great deference" on post-conviction review. *See Twist v. State*, 617 A.2d 548, 550 (Me. 1992). His decision to present Ames testimony did not exceed the scope of that discretion.

### 3. Evidence of vehicle and Derek Sack's exit from vehicle

Merchant claims that DeSanctis failed to present evidence that would give the jurors an adequate understanding of the configuration of the interior of the vehicle (an SUV) in which he, the victim and the victim's boyfriend (Derek Sack) were riding on the night of the assault. The trial evidence indicated that Merchant drove the SUV, Sack sat next to the passenger-side door and the victim first sat in the rear and then moved to the front between the two men. Merchant argues that this information about the vehicle was necessary to establish that he could not have reached across the passenger compartment to close the door after Sack exited the vehicle and that he could not have thrown the victim onto the seat, as the victim testified.

The evidence reveals that the vehicle at issue was a conventional one. Because of this, the jurors were capable of using their ordinary experience to be able to understand the configuration of the truck. Further, at least eighteen photographs were admitted into

4

evidence, depicting the vehicle. *See* State's exhibits 18-35. Several of these photographs show the precise area that Merchant claims here were not adequately described for the jury. *See, e.g.,* State's exhibits 22, 25, 31. And beyond this, DeSanctis presented evidence in support of the points that Merchant claims now were overlooked. For example, DeSanctis developed testimony from Sack that when he exited the vehicle, the victim closed the door behind him. *See* October 15, 2001, transcript at p. 232. This is clearly exculpatory evidence supporting the central defense that Merchant had consensual sex with the victim.

Merchant also faults DeSanctis for failing to develop evidence that Sack left the vehicle (with Merchant and the victim in it) not as the result of Merchant's trickery as the victim testified, but rather for benign reasons. In fact, Sack testified that he exited the vehicle because he and Merchant became involved in an argument. *See* October 15, 2001, transcript at p. 231.[2]

### 4. Taped telephone calls

As part of the State's evidence at trial, the prosecution presented an audiotape of telephone calls made by Merchant while he was incarcerated at the Penobscot County Jail awaiting trial. In those calls, he made statements that were directly and indirectly incriminating. He now contends that the tapes must have been altered because they do not reflect his normal speech pattern: he claims that the pauses are not typical of the way he talks. However, he does not challenge or otherwise question that he was the speaker and uttered the words that are recorded on the tape. Thus, this argument does not entitle him to relief here.

### 5. Condition of victim's clothes

Merchant contends that DeSanctis failed to develop evidence that the condition of the victim's clothes was not consistent with her account that he had pushed her against the side of Merchant's vehicle. *See* October 14, 2003, transcript at p. 183. The court takes Merchant's argument to be that dirt from the exterior surface of the vehicle would have transferred onto her clothes through this action. Although counsel did not make that

---

[2] When seen in this way, Sack's testimony was actually more helpful to Merchant than Merchant's own testimony, which indicated that he created a ruse to get Sack out of the vehicle and then drove off with the victim to another location, where, he said, they had consensual sex. *See* November 16, 2001, transcript at p. 61.

5

point through the testimony of the Maine State Police Crime Laboratory agents who examined her clothes, he elicited comparable evidence through the testimony of the first two people who had contact with the victim after she was assaulted. One of those witnesses testified that the victim's clothes were not disheveled and that her appearance was unremarkable. *See* October 15, 2001, transcript at pp. 135, 137. The second person offered similar testimony. *See id.* at pp. 142, 144, 146. To the extent that evidence of the appearance of the victim's clothes is material in light of other, more significant evidence in the case, the proposition urged by Merchant was established adequately.

## 6. Opening statements and closing arguments

Merchant claims that both trial lawyers made improper remarks during their opening statements and closing arguments. He also claims that the prosecutor's statements in these contexts amounted to prosecutorial misconduct that his attorney on appeal should have raised. In other words, with respect to the State's presentation, Merchant faults his trial attorney for failing to object and his appellate counsel for failing to press the issue on appeal. Due to the interrelated nature of these arguments, the court addresses them here.

### a. Opening statements

In his opening statement, Povich began his discussion of the crimes by noting that the event "started on Thursday, December 7, 2000, Pearl Harbor Day. In many respects, it was like Pearl Harbor, a sneak attack." *See* November 13, 2001, transcript at p. 3. He then went on to identify the people who were central to the events and the relationship among them. Merchant argues that DeSanctis should have objected to the reference to a "sneak attack."

An opening statement gives counsel an opportunity to "set the stage for the trial[,]. . .to identify the issues and to outline the facts which the attorney expects to establish in the course of the trial." *State v. Bernier*, 486 A.2d 147, 149 (Me. 1985). Here, Povich did nothing more than that. The reference to a sneak attack was connected to the date of the incident, which was the anniversary of a widely known event of great historical importance. This description also bore some support in the evidence: the State presented testimony that Merchant orchestrated a situation where he eliminated the presence of the victim's fiancée, drove her to an isolated location and then sexually

assaulted her. The court cannot conclude that the reference to a "sneak attack" was unfairly prejudicial, even in the context of an opening statement.

Further, Merchant was not deprived of effective assistance of counsel on appeal when this issue was not raised on that appeal. A defendant is entitled to appellate relief only when an improper opening statement creates "substantial prejudice." *Bernier*, 486 A.2d at 149. Here, Merchant has shown neither an impropriety nor substantial prejudice.

Merchant also contends that he was deprived of effective assistance of counsel because of DeSanctis' characterization of him in his opening. DeSanctis emphasized to the jury the allocation and magnitude of the State's burden of proof, and he then said, "I mean, he [the defendant] may be a reprehensible pig. You could decide that, well, a 37 year old man shouldn't have sex with a 17 year old; shouldn't get alcohol for a 17 year old; shouldn't be running the roads half naked in the snow. But you only have to concern yourself, not with lifestyle choices or behaviors that are not criminal, but only those that are alleged as criminal behaviors and those that are proven by the elements." *See* November 13, 2001, transcript at p. 21. Although DeSanctis' description of his client was less than flattering, it represented his attempt to force the jury to focus on the essential fact that Merchant was charged with criminal conduct and to avoid the distraction of conduct that was inappropriate but less than criminal. This effort to inoculate the jury was well founded, because even the defense evidence established that Merchant committed the acts that DeSanctis described to the jury. DeSanctis' comments were the result of his strategic decision to mention improper conduct that Merchant did not contest, in order to explain to the jury the nature of the real decision it would be asked to make. In light of the grossly untoward conduct that Merchant admitted committing, DeSanctis' remarks were entirely sensible.

### b. Closing arguments

Merchant claims that Povich presented improper arguments and that DeSanctis' failure to object to those arguments amounted to a deprivation of effective representation. These allegedly improper remarks fall into two categories: improper comments by the prosecution about the credibility of witnesses, and comments that were more generally *prejudicial.*

7

First, several times, Povich asserted to the jury that the victim had testified truthfully. *See, e.g.,* November 17, 2001, transcript at pp. 14, 63.

> . . .[I]t is improper for a prosecuting attorney to assert an opinion concerning the credibility of a witness. . . .Conversely, we [the Law Court] repeatedly have upheld the prosecutor's ability to argue vigorously for any position, conclusion, or inference supported by the evidence. . . .The central issue, therefore, when a defendant contends that the prosecutor injected personal opinion into closing argument, is whether the challenged comment reflects an improper personal opinion or is an argument fairly based on the evidence.

*State v. Ashley,* 666 AA.2d 103, 105 (Me. 1995). Here, the court has reviewed the passages that Merchant contends represented an expression of Povich's personal opinion of the truthfulness of the victim. The context of the challenged remarks makes clear that they represented the conclusion that Povich argued flowed from specific evidence in the case. In other words, Povich – as he was allowed to do – made an argument that "was based on facts in evidence." *State v. Harnish,* 560 A.2d 5, 10 (Me. 1989). In context, these comments therefore were not improper. There would have been no merit to an objection at trial or an argument on appeal challenging these comments.

Second, Merchant points to several other comments that, he contends, should have prompted objections from DeSanctis. Povich described the alleged crimes as "serious and heinous." *See,* November 17, 2001, transcript at p. 5. It cannot be argued that the crimes charged against Merchant were anything else. Next, Povich distilled the evidence into several sentences: "Look at the dynamics. Crystal [the victim] was 17 years old. She's in love with Derrick. He is her fiancée. He's 19. And they went riding with this 37 year old opportunistic predator who, biding his time, dumped the boy, took off with the girl and forcibly raped her." *See id.* at p 6. Apparently referring to a prior conviction for sexual assault, Merchant claims here that the reference to him as a "predator" was improper. However, Merchant's criminal record was not disclosed to the jury, and this single word was not a signal to the jury of that history. Rather, it is a fair characterization of exploitative conduct that was based on record evidence supporting these particular charges. Finally, Povich described rape as an act of "power, and control, not sex." *See id.* at p. 15. When viewed in light of the circumstances of the assault that Povich described immediately prior to this comment and in light of Merchant's trial testimony that he had consensual sex with the victim, this observation is fair argument.

8

For these reasons, the court concludes that Povich's arguments were not improper. Merchant' right to effective representation therefore was not compromised by DeSanctis' failure to object to those remarks or by appellate counsel's failure to challenge them on appeal.

## C. Sentencing proceeding

Merchant makes two basic claims regarding DeSanctis' representation of his interests at the sentencing hearing:[3] that DeSanctis did not adequately prepare him or others to make effective presentations; and that DeSanctis did not advise the court that Merchant had received several certificates for programs such as parenting training and continuing education.

Merchant's sister and father both made supportive comments during the sentencing hearing. Although Merchant argues here that they did not have the benefit of advance guidance from DeSanctis, there is no evidence that they omitted any information or that their remarks suffered from any failure of DeSanctis. Further, Merchant himself declined to make any statements prior to imposition of sentence, although the court clearly advised him of his right of allocution and his acknowledgement of that right. Here, Merchant does not identify any prejudice flowing from that choice.

At the post-conviction hearing, Merchant presented evidence of classes and other programs he had completed prior to the date he was sentenced. He received these certificates in GED programs, a parenting course, a PTSD group, a substance abuse program and several Bible study courses. DeSanctis did not present this information to the court during the sentencing hearing, and Merchant contends here that this amounted to a deprivation of effective legal representation.

At the very least, any such omission would not entitle Merchant to relief here because for two reasons, that evidence would have had no impact on the sentence that ultimately was imposed. First, the significance of this evidence is overwhelmed by other sentencing factors, particularly those relevant to determining the basic sentence (that is, the factors associated with the crimes themselves) and the principal aggravating factors

---

[3] Shortly prior to the hearing date, DeSanctis filed a motion to withdraw. The court denied that motion, and DeSanctis was thus obligated to represent Merchant to the completion of the Superior Court process.

relevant to the second stage of the sentencing analysis. The latter considerations include Merchant's criminal record (including another conviction for gross sexual assault against a minor, and a federal conviction that resulted in a period of probation that was in effect when Merchant committed the crimes at issue here) and his failure to assume responsibility for the instant criminal acts, manifested in part by his testimonial denials. Because these factors are of immense magnitude in the sentencing analysis, the certificates that Merchant earned would not have influenced the sentence.

Further, any impact created by this material would be undermined by the very fact that, having achieved the certificates in the particular areas of study, Merchant nonetheless committed the crimes as charged. For example, Merchant completed a parenting class. However, at the time of the sexual assault, the victim was a minor, and Merchant was old enough to be her father. His acts against her do not speak well of his parental sensibilities. Further, the lessons that one might learn from Bible study are inimical to the crimes he committed in this case. Thus, Merchant's attainment of these certificates would bolster the State's argument (and the court's conclusion expressed at sentencing) that Merchant was not a good candidate for rehabilitation. Thus, if Merchant's successful participation in these educational programs was material, that participation would not constitute a meaningful mitigating sentencing consideration.

Either directly or indirectly, Merchant has raised several additional issues in support of his argument that he was deprived of his right to effective representation. These additional points do not merit discussion.

The entry shall be:

For the foregoing reasons, the petition for post-conviction relief is denied.

Denied: February 17, 2005

_____
Justice, Maine Superior Court

FILED &
ENTERED

FEB 1 8 2005

SUPERIOR COURT
HANCOCK COUNTY

10